# DANIELS v. WILLIAMS

No. 84–5872.   Argued November 6, 1985—Decided January 21, 1986

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, POWELL, and O'CONNOR, JJ., joined. MARSHALL, J., concurred in the result.  BLACKMUN, J., *post*, p. 336, and STEVENS, J., *post*, p. 336, filed opinions concurring in the judgment.

*Stephen Allan Saltzburg* argued the cause and filed briefs for petitioner.

*James Walter Hopper* argued the cause and filed a brief for respondent.

JUSTICE REHNQUIST delivered the opinion of the Court.

In *Parratt* v. *Taylor,* 451 U. S. 527 (1981), a state prisoner sued under 42 U. S. C. § 1983, claiming that prison officials had negligently deprived him of his property without due process of law. After deciding that § 1983 contains no independent state-of-mind requirement, we concluded that although petitioner had been "deprived" of property within the meaning of the Due Process Clause of the Fourteenth Amendment, the State's postdeprivation tort remedy provided the process that was due. Petitioner's claim in this case, which also rests on an alleged Fourteenth Amendment "deprivation" caused by the negligent conduct of a prison official, leads us to reconsider our statement in *Parratt* that "the alleged loss, even though negligently caused, amounted to a deprivation." *Id.,* at 536–537. We conclude that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.

In this § 1983 action, petitioner seeks to recover damages for back and ankle injuries allegedly sustained when he fell on a prison stairway. He claims that, while an inmate at the city jail in Richmond, Virginia, he slipped on a pillow negligently left on the stairs by respondent, a correctional deputy stationed at the jail. Respondent's negligence, the argument runs, "deprived" petitioner of his "liberty" interest in freedom from bodily injury, see *Ingraham* v. *Wright,* 430 U. S. 651, 673 (1977); because respondent maintains that he is entitled to the defense of sovereign immunity in a state tort suit, petitioner is without an "adequate" state remedy, cf. *Hudson* v. *Palmer,* 468 U. S. 517, 534–536 (1984). Accordingly, the deprivation of liberty was without "due process of law."

The District Court granted respondent's motion for summary judgment. A panel of the Court of Appeals for the Fourth Circuit affirmed, concluding that even if respondent could make out an immunity defense in state court, petitioner would not be deprived of a meaningful opportunity to present his case. 720 F. 2d 792 (1983). On rehearing, the en banc Court of Appeals affirmed the judgment of the District Court, but under reasoning different from that of the panel. 748 F. 2d 229 (1984). First, a 5–4 majority ruled that negligent infliction of bodily injury, unlike the negligent loss of property in *Parratt*, does not constitute a deprivation of any interest protected by the Due Process Clause. The majority therefore believed that the postdeprivation process mandated by *Parratt* for property losses was not required. Second, the en banc court unanimously decided that even if a prisoner is entitled to some remedy for personal injuries attributable to the negligence of state officials, *Parratt* would bar petitioner's claim if the State provided an adequate postdeprivation remedy. Finally, a 6–3 majority concluded that petitioner had an adequate remedy in state court, even though respondent asserted that he would rely on sovereign immunity as a defense in a state suit. The majority apparently believed that respondent's sovereign immunity defense would fail under Virginia law.

Because of the inconsistent approaches taken by lower courts in determining when tortious conduct by state officials rises to the level of a constitutional tort, see *Jackson* v. *Joliet*, 465 U. S. 1049, 1050 (1984) (WHITE, J., dissenting from denial of certiorari) (collecting cases), and the apparent lack of adequate guidance from this Court, we granted certiorari. 469 U. S. 1207 (1985). We now affirm.

In *Parratt* v. *Taylor*, we granted certiorari, as we had twice before, "to decide whether mere negligence will support a claim for relief under § 1983." 451 U. S., at 532. After examining the language, legislative history, and prior interpretations of the statute, we concluded that § 1983, un-

like its criminal counterpart, 18 U. S. C. § 242, contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right. *Id.*, at 534–535. We adhere to that conclusion. But in any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct may not be enough to state a claim. See, *e. g.*, *Arlington Heights* v. *Metropolitan Housing Dev. Corp.*, 429 U. S. 252 (1977) (invidious discriminatory purpose required for claim of racial discrimination under the Equal Protection Clause); *Estelle* v. *Gamble*, 429 U. S. 97, 105 (1976) ("deliberate indifference" to prisoner's serious illness or injury sufficient to constitute cruel and unusual punishment under the Eighth Amendment).

In *Parratt*, before concluding that Nebraska's tort remedy provided all the process that was due, we said that the loss of the prisoner's hobby kit, "even though negligently caused, amounted to a deprivation [under the Due Process Clause]." 451 U. S., at 536–537. JUSTICE POWELL, concurring in the result, criticized the majority for "pass[ing] over" this important question of the state of mind required to constitute a "deprivation" of property. *Id.*, at 547. He argued that negligent acts by state officials, though causing loss of property, are not actionable under the Due Process Clause. To JUSTICE POWELL, mere negligence could not "wor[k] a deprivation in the *constitutional sense*." *Id.*, at 548 (emphasis in original). Not only does the word "deprive" in the Due Process Clause connote more than a negligent act, but we should not "open the federal courts to lawsuits where there has been no affirmative abuse of power." *Id.*, at 548–549; see also *id.*, at 545 (Stewart, J., concurring) ("To hold that this kind of loss is a deprivation of property within the meaning of the Fourteenth Amendment seems not only to trivialize, but grossly to distort the meaning and intent of the Constitution"). Upon reflection, we agree and overrule *Parratt* to the extent that it states that mere lack of due care by a state

official may "deprive" an individual of life, liberty, or property under the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property. *E. g.*, *Davidson* v. *New Orleans*, 96 U. S. 97 (1878) (assessment of real estate); *Rochin* v. *California*, 342 U. S. 165 (1952) (stomach pumping); *Bell* v. *Burson*, 402 U. S. 535 (1971) (suspension of driver's license); *Ingraham* v. *Wright*, 430 U. S. 651 (1977) (paddling student); *Hudson* v. *Palmer*, 468 U. S. 517 (1984) (intentional destruction of inmate's property). No decision of this Court before *Parratt* supported the view that negligent conduct by a state official, even though causing injury, constitutes a deprivation under the Due Process Clause. This history reflects the traditional and common-sense notion that the Due Process Clause, like its forebear in the Magna Carta, see Corwin, The Doctrine of Due Process of Law Before the Civil War, 24 Harv. L. Rev. 366, 368 (1911), was "'intended to secure the individual from the arbitrary exercise of the powers of government,'" *Hurtado* v. *California*, 110 U. S. 516, 527 (1884) (quoting *Bank of Columbia* v. *Okely*, 4 Wheat. 235, 244 (1819)). See also *Wolff* v. *McDonnell*, 418 U. S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government, *Dent* v. *West Virginia*, 129 U. S. 114, 123 (1889)"); *Parratt*, *supra*, at 549 (POWELL, J., concurring in result). By requiring the government to follow appropriate procedures when its agents decide to "deprive any person of life, liberty, or property," the Due Process Clause promotes fairness in such decisions. And by barring certain government actions regardless of the fairness of the procedures used to implement them, *e. g.*, *Rochin*, *supra*, it serves to prevent governmental power from being "used for purposes of oppression," *Murray's Les-*

*see* v. *Hoboken Land & Improvement Co.*, 18 How. 272, 277 (1856) (discussing Due Process Clause of Fifth Amendment).

We think that the actions of prison custodians in leaving a pillow on the prison stairs, or mislaying an inmate's property, are quite remote from the concerns just discussed. Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.

The Fourteenth Amendment is a part of a Constitution generally designed to allocate governing authority among the Branches of the Federal Government and between that Government and the States, and to secure certain individual rights against both State and Federal Government. When dealing with a claim that such a document creates a right in prisoners to sue a government official because he negligently created an unsafe condition in the prison, we bear in mind Chief Justice Marshall's admonition that "we must never forget, that it is *a constitution* we are expounding," *McCulloch* v. *Maryland*, 4 Wheat. 316, 407 (1819) (emphasis in original). Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society. We have previously rejected reasoning that "'would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States,'" *Paul* v. *Davis*, 424 U. S. 693, 701 (1976), quoted in *Parratt* v. *Taylor*, 451 U. S., at 544.

The only tie between the facts of this case and anything governmental in nature is the fact that respondent was a sheriff's deputy at the Richmond city jail and petitioner was an inmate confined in that jail. But while the Due Process Clause of the Fourteenth Amendment obviously speaks to some facets of this relationship, see, *e. g.*, *Wolff* v. *McDon-*

*nell, supra,* we do not believe its protections are triggered by lack of due care by prison officials. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner," *Estelle* v. *Gamble,* 429 U. S. 97, 106 (1976), and "false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official." *Baker* v. *McCollan,* 443 U. S. 137, 146 (1979). Where a government official's act causing injury to life, liberty, or property is merely negligent, "no procedure for compensation is *constitutionally* required." *Parratt, supra,* at 548 (POWELL, J., concurring in result) (emphasis added).[1]

That injuries inflicted by governmental negligence are not addressed by the United States Constitution is not to say that they may not raise significant legal concerns and lead to the creation of protectible legal interests. The enactment of tort claim statutes, for example, reflects the view that injuries caused by such negligence should generally be redressed.[2] It is no reflection on either the breadth of the United States Constitution or the importance of traditional tort law to say that they do not address the same concerns.

In support of his claim that negligent conduct can give rise to a due process "deprivation," petitioner makes several arguments, none of which we find persuasive. He states, for example, that "it is almost certain that *some* negligence claims are within § 1983," and cites as an example the failure of a State to comply with the procedural requirements of *Wolff* v. *McDonnell, supra,* before depriving an inmate of good-time credit. We think the relevant action of the prison

---

[1] Accordingly, we need not decide whether, as petitioner contends, the possibility of a sovereign immunity defense in a Virginia tort suit would render that remedy "inadequate" under *Parratt* and *Hudson* v. *Palmer,* 468 U. S. 517 (1984).

[2] See, *e. g.,* the Virginia Tort Claims Act, Va. Code § 8.01–195.1 *et seq.* (1984), which applies only to actions accruing on or after July 1, 1982, and hence is inapplicable to this case.

officials in that situation is their deliberate decision to deprive the inmate of good-time credit, not their hypothetically negligent failure to accord him the procedural protections of the Due Process Clause. But we need not rule out the possibility that there are other constitutional provisions that would be violated by mere lack of care in order to hold, as we do, that such conduct does not implicate the Due Process Clause of the Fourteenth Amendment.

Petitioner also suggests that artful litigants, undeterred by a requirement that they plead more than mere negligence, will often be able to allege sufficient facts to support a claim of intentional deprivation. In the instant case, for example, petitioner notes that he could have alleged that the pillow was left on the stairs with the intention of harming him. This invitation to "artful" pleading, petitioner contends, would engender sticky (and needless) disputes over what is fairly pleaded. What's more, requiring complainants to allege something more than negligence would raise serious questions about what "more" than negligence—intent, recklessness, or "gross negligence"—is required,[3] and indeed about what these elusive terms mean. See Reply Brief for Petitioner 9 ("what terms like willful, wanton, reckless or gross negligence mean" has "left the finest scholars puzzled"). But even if accurate, petitioner's observations do not carry the day. In the first place, many branches of the law abound in nice distinctions that may be troublesome but have been thought nonetheless necessary:

> "I do not think we need trouble ourselves with the thought that my view depends upon differences of degree. The whole law does so as soon as it is civilized."

---

[3] Despite his claim about what he might have pleaded, petitioner concedes that respondent was at most negligent. Accordingly, this case affords us no occasion to consider whether something less than intentional conduct, such as recklessness or "gross negligence," is enough to trigger the protections of the Due Process Clause.

*LeRoy Fibre Co.* v. *Chicago, M. & St. P. R. Co.*, 232 U. S. 340, 354 (1914) (Holmes, J., partially concurring). More important, the difference between one end of the spectrum—negligence—and the other—intent—is abundantly clear. See O. Holmes, The Common Law 3 (1923). In any event, we decline to trivialize the Due Process Clause in an effort to simplify constitutional litigation.

Finally, citing *South* v. *Maryland,* 18 How. 396 (1856), petitioner argues that respondent's conduct, even if merely negligent, breached a sheriff's "special duty of care" for those in his custody. Reply Brief for Petitioner 14. The Due Process Clause, petitioner notes, "was intended to give Americans at least the protection against governmental power that they had enjoyed as Englishmen against the power of the crown." *Ingraham* v. *Wright,* 430 U. S., at 672–673. And *South* v. *Maryland* suggests that one such protection was the right to recover against a sheriff for breach of his ministerial duty to provide for the safety of prisoners in his custody. 18 How., at 402–403. Due process demands that the State protect those whom it incarcerates by exercising reasonable care to assure their safety and by compensating them for negligently inflicted injury.

We disagree. We read *South* v. *Maryland, supra,* an action brought under federal diversity jurisdiction on a Maryland sheriff's bond, as stating no more than what this Court thought to be the principles of common law and Maryland law applicable to that case; it is not cast at all in terms of constitutional law, and indeed could not have been, since at the time it was rendered there was no due process clause applicable to the States. Petitioner's citation to *Ingraham* v. *Wright* does not support the notion that all common-law duties owed by government actors were somehow constitutionalized by the Fourteenth Amendment. Jailers may owe a special duty of care to those in their custody under state tort law, see Restatement (Second) of Torts § 314A(4) (1965), but for the reasons previously stated we reject the contention that the

Due Process Clause of the Fourteenth Amendment embraces such a tort law concept. Petitioner alleges that he was injured by the negligence of respondent, a custodial official at the city jail. Whatever other provisions of state law or general jurisprudence he may rightly invoke, the Fourteenth Amendment to the United States Constitution does not afford him a remedy.

*Affirmed.*

JUSTICE MARSHALL concurs in the result.

JUSTICE BLACKMUN, concurring in the judgment.

I concur in the judgment. See my opinion in dissent in *Davidson* v. *Cannon, post,* p. 349.

JUSTICE STEVENS, concurring in the judgments.*

Two prisoners raise similar claims in these two cases. Both seek to recover for personal injuries suffered, in part, from what they allege was negligence by state officials. Both characterize their injuries as "deprivations of liberty" and both invoke 42 U. S. C. § 1983 as a basis for their claims.

Prisoner Roy Daniels was injured when he slipped on a newspaper and pillows left on a stairway in the Virginia jail where he is incarcerated; he alleges state negligence in the presence of the objects on the stairs. Prisoner Robert Davidson suffered injury when he was attacked by another inmate in the New Jersey prison where he is incarcerated; he alleges (and proved at trial) state negligence in the failure of prison authorities to prevent the assault after he had written a note expressing apprehension about the inmate who ultimately assaulted him. I agree with the majority that petitioners cannot prevail under § 1983. I do not agree, however, that it is necessary either to redefine the meaning of "deprive" in the Fourteenth Amendment,[1] or to repudiate

---

*[This opinion applies also to *Davidson* v. *Cannon et al.,* No. 84–6470, *post,* p. 344.]

[1] "[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ." U. S. Const., Amdt. 14.

the reasoning of *Parratt* v. *Taylor*, 451 U. S. 527 (1981), to support this conclusion.

We should begin by identifying the precise constitutional claims that petitioners have advanced. It is not enough to note that they rely on the Due Process Clause of the Fourteenth Amendment, for that Clause is the source of three different kinds of constitutional protection. First, it incorporates specific protections defined in the Bill of Rights. Thus, the State, as well as the Federal Government, must comply with the commands in the First[2] and Eighth[3] Amendments; so too, the State must respect the guarantees in the Fourth,[4] Fifth,[5] and Sixth[6] Amendments. Second, it contains a substantive component, sometimes referred to as "substantive due process," which bars certain arbitrary government actions "regardless of the fairness of the procedures used to implement them." *Ante*, at 331.[7] Third, it is a guarantee of fair procedure, sometimes referred to as "procedural due process": the State may not execute, imprison, or fine a defendant without giving him a fair trial,[8] nor may it take property without providing appropriate procedural safeguards.[9]

The type of Fourteenth Amendment interest that is implicated has important effects on the nature of the constitutional claim and the availability of § 1983 relief. If the claim is in

---

[2] See, *e. g.*, *Douglas* v. *Jeannette*, 319 U. S. 157 (1943).

[3] See, *e. g*, *Robinson* v. *California*, 370 U. S. 660 (1962).

[4] See, *e. g.*, *Mapp* v. *Ohio*, 367 U. S. 643 (1961).

[5] See, *e. g.*, *Malloy* v. *Hogan*, 378 U. S. 1 (1964) (right to protection from compelled self-incrimination applies to States); *Benton* v. *Maryland*, 395 U. S. 784 (1969) (right to protection from double jeopardy applies to States).

[6] See, *e. g.*, *Duncan* v. *Louisiana*, 391 U. S. 145 (1968) (right to jury trial applies to States).

[7] See also *Moore* v. *East Cleveland*, 431 U. S. 494 (1977); *Youngberg* v. *Romeo*, 457 U. S. 307 (1982).

[8] See, *e. g.*, *Groppi* v. *Leslie*, 404 U. S. 496 (1972); *In re Oliver*, 333 U. S. 257 (1948).

[9] See, *e. g.*, *Fuentes* v. *Shevin*, 407 U. S. 67 (1972).

the first category (a violation of one of the specific constitutional guarantees of the Bill of Rights), a plaintiff may invoke § 1983 regardless of the availability of a state remedy.[10] As explained in *Monroe* v. *Pape*, 365 U. S. 167 (1961), this conclusion derives from the fact that the statute—the Ku Klux Act of 1871—was intended to provide a federal remedy for the violation of a federal constitutional right. Thus, when the Fourth Amendment is violated, as in *Pape*, the provision of an independent federal remedy under § 1983 is necessary to satisfy the purpose of the statute.

Similarly, if the claim is in the second category (a violation of the substantive component of the Due Process Clause), a plaintiff may also invoke § 1983 regardless of the availability of a state remedy.[11] For, in that category, no less than with the provisions of the Bill of Rights, if the Federal Constitution prohibits a State from taking certain actions "regardless of the fairness of the procedures used to implement them," the constitutional violation is complete as soon as the prohibited action is taken; the independent federal remedy is then authorized by the language and legislative history of § 1983.

A claim in the third category—a procedural due process claim—is fundamentally different. In such a case, the deprivation may be entirely legitimate—a State may have every right to discharge a teacher or punish a student—but the State may nevertheless violate the Constitution by failing to provide appropriate procedural safeguards. The constitutional duty to provide fair procedures gives the citizen the opportunity to try to prevent the deprivation from happening, but the deprivation itself does not necessarily reflect any

---

[10] See, *e. g.*, *Monroe* v. *Pape*, 365 U. S. 167 (1961) (§ 1983 action for Fourth Amendment violation); *Smith* v. *Wade*, 461 U. S. 30 (1983) (§ 1983 action for Eighth Amendment violation). See generally *McNeese* v. *Board of Education*, 373 U. S. 668, 672 (1963) (§ 1983 is "supplementary to any remedy any State might have").

[11] Cf. *Parratt* v. *Taylor*, 451 U. S. 527, 545 (1981) (BLACKMUN, J., concurring); *Roe* v. *Wade*, 410 U. S. 113 (1973).

"abuse" of state power. Similarly, a deprivation may be the consequence of a mistake or a negligent act, and the State may violate the Constitution by failing to provide an appropriate procedural response. In a procedural due process claim, it is not the deprivation of property or liberty that is unconstitutional; it is the deprivation of property or liberty *without due process of law*—without adequate procedures.

Thus, even though the State may have every right to deprive a person of his property or his liberty, the individual may nevertheless be able to allege a valid § 1983 due process claim, perhaps because a predeprivation hearing must be held,[12] or because the state procedure itself is fundamentally flawed.[13] So too, even though a deprivation may be unauthorized, a procedural due process claim may be raised if it challenges the State's procedures for preventing or redressing the deprivation. However, a complaint does not state a valid procedural due process objection—and a valid § 1983 claim—if it does not include a challenge to the fundamental fairness of the State's procedures. In consequence, when a predeprivation hearing is clearly not feasible,[14] when the regime of state tort law provides a constitutionally unobjectionable system of recovery for the deprivation of property or liberty, and when there is no other challenge to the State's procedures, a valid § 1983 claim is not stated. For, unlike cases in the other two categories—those in which the alleged

---

[12] See, *e. g.*, *Loudermill* v. *Cleveland Board of Education*, 470 U. S. 532 (1985); *Carey* v. *Piphus*, 435 U. S. 247 (1978); *Goss* v. *Lopez*, 419 U. S. 565 (1975). Cf. *Groppi, supra.*

[13] Cf. *Logan* v. *Zimmerman Brush Co.*, 455 U. S. 422, 436 (1982) (postdeprivation state remedy is inadequate when challenge is to "the state system itself"); *Baker* v. *McCollan*, 443 U. S. 137, 156 (1979) (STEVENS, J., dissenting).

[14] See *Hudson* v. *Palmer*, 468 U. S. 517, 533 (1984) ("[W]hen deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur"); *Parratt* v. *Taylor, supra.*

deprivation violates a substantive federal right—if a procedural due process claim lacks a colorable objection to the validity of the State's procedures, no constitutional violation has been alleged.[15]

Petitioners' claims are not of the first kind. Neither Daniels nor Davidson argues in this Court that the prison authorities' actions violated specific constitutional guarantees incorporated by the Fourteenth Amendment. Neither now claims, for instance, that his rights under the Eighth Amendment were violated. Similarly, I do not believe petitioners have raised a colorable violation of "substantive due process."[16] Rather, their claims are of the third kind: Daniels and Davidson attack the validity of the procedures that Virginia and New Jersey, respectively, provide for prisoners who seek redress for physical injury caused by the negligence of corrections officers.

I would not reject these claims, as the Court does, by attempting to fashion a new definition of the term "depriva-

---

[15] See id., at 543–544.

[16] Davidson explicitly disavows a substantive due process claim. See Brief for Petitioner in No. 84–6470, p. 7 ("[P]etitioner frames his claim here purely in terms of procedural due process"). At oral argument, counsel for Daniels did suggest that he was pursuing a substantive due process claim. Tr. of Oral Arg. in No. 84–5872, p. 22. However, the Court of Appeals viewed Daniels' claim as a procedural due process argument, see 748 F. 2d 229, 230, n. 1 (CA4 1984) ("There is no claim of any substantive due process violation"), and Daniels did not dispute this characterization in his petition for certiorari or in his brief on the merits.

In any event, to the extent that petitioners' arguments about the special obligations of prison officials may be read as a substantive due process claim, I agree with the Court, ante, at 335–336, that the sheriff's "special duty of care" recognized in South v. Maryland, 18 How. 396 (1856), does not have its source in the Federal Constitution. In these circumstances, it seems to me, the substantive constitutional duties of prison officials to prisoners are defined by the Eighth Amendment, not by substantive due process. Cf. United States ex rel. Miller v. Twomey, 479 F. 2d 701, 719–721 (CA7 1973) (analyzing prison officials' responsibilities to prevent inmate assaults under the Eighth Amendment), cert. denied sub nom. Gutierrez v. Department of Public Safety of Illinois, 414 U. S. 1146 (1974).

tion" and excluding negligence from its scope. No serious question has been raised about the presence of "state action" in the allegations of negligence,[17] and the interest in freedom from bodily harm surely qualifies as an interest in "liberty." Thus, the only question is whether negligence by state actors can result in a deprivation. "Deprivation," it seems to me, identifies, not the actor's state of mind, but the victim's infringement or loss. The harm to a prisoner is the same whether a pillow is left on a stair negligently, recklessly, or intentionally; so too, the harm resulting to a prisoner from an attack is the same whether his request for protection is ignored negligently, recklessly, or deliberately. In each instance, the prisoner is losing—being "deprived" of—an aspect of liberty as the result, in part, of a form of state action.

Thus, I would characterize each loss as a "deprivation" of liberty. Because the cases raise only procedural due process claims, however, it is also necessary to examine the nature of petitioners' challenges to the state procedures. To prevail, petitioners must demonstrate that the state procedures for redressing injuries of this kind are constitutionally inadequate. Petitioners must show that they contain a defect so serious that we can characterize the procedures as fundamentally unfair, a defect so basic that we are forced to conclude that the deprivation occurred without due process.

Daniels' claim is essentially the same as the claim we rejected in *Parratt*. The Court of Appeals for the Fourth Circuit determined that Daniels had a remedy for the claimed negligence under Virginia law. Although Daniels vigorously argues that sovereign immunity would have defeated his claim, the Fourth Circuit found to the contrary, and it is our settled practice to defer to the Courts of Appeals on ques-

---

[17] Respondents in *Davidson* do raise a state-action objection in one sentence, Brief for Respondents in No. 84–6470, p. 13, n., but that bare reference is inadequate to mount a challenge to the undisturbed District Court finding of state action.

tions of state law.[18]   It is true that *Parratt* involved an injury to "property" and that Daniels' case involves an injury to "liberty," but, in both cases, the plaintiff claimed nothing more than a "procedural due process" violation.   In both cases, a predeprivation hearing was definitionally impossible.[19]   And, in both cases, the plaintiff had state remedies that permitted recovery if state negligence was established.   Thus, a straightforward application of *Parratt* defeats Daniels' claim.

Davidson's claim raises a question not specifically addressed in *Parratt*.   According to the Third Circuit, no state remedy was available because a New Jersey statute prohibits prisoner recovery from state employees for injuries inflicted by other prisoners.   Thus, *Davidson* puts the question whether a state policy of noncompensability for certain types of harm, in which state action may play a role, renders a state procedure constitutionally defective.   In my judgment, a state policy that defeats recovery does not, in itself, carry that consequence.   Those aspects of a State's tort regime that defeat recovery are not constitutionally invalid, so long as there is no fundamental unfairness in their operation.   Thus, defenses such as contributory negligence or statutes of limitations may defeat recovery in particular cases without raising any question about the constitutionality of a State's procedures for disposing of tort litigation.   Similarly, in my judgment, the mere fact that a State elects to provide some of its agents with a sovereign immunity defense in certain cases does not justify the conclusion that its remedial system is constitutionally inadequate.   There is no reason to believe that the Due Process Clause of the Fourteenth Amendment

---

[18] See *Haring* v. *Prosise*, 462 U. S. 306, 314, n. 8 (1983); *Leroy* v. *Great Western United Corp.*, 443 U. S. 173, 181, n. 11 (1979); *Bishop* v. *Wood*, 426 U. S. 341, 345–347 (1976); *Propper* v. *Clark*, 337 U. S. 472, 486–487 (1949).

[19] It borders on the absurd to suggest that a State must provide a hearing to determine whether or not a corrections officer should engage in negligent conduct.

and the legislation enacted pursuant to § 5 of that Amendment should be construed to suggest that the doctrine of sovereign immunity renders a state procedure fundamentally unfair.[20]  Davidson's challenge has been only to the fact of sovereign immunity; he has not challenged the difference in treatment of a prisoner assaulted by a prisoner and a non-prisoner assaulted by a prisoner, and I express no comment on the fairness of that differentiation.

Thus, although I believe that the harms alleged by Daniels and proved by Davidson qualify as deprivations of liberty, I am not persuaded that either has raised a violation of the Due Process Clause of the Fourteenth Amendment.   I therefore concur in the judgments.

---

[20] In *Martinez* v. *California,* 444 U. S. 277 (1980), we held that California's immunity statute did not violate the Due Process Clause simply because it operated to defeat a tort claim arising under state law.   The fact that an immunity statute does not give rise to a procedural due process claim does not, of course, mean that a State's doctrine of sovereign immunity can protect conduct that violates a federal constitutional guarantee; obviously it cannot, see *Martinez, supra,* at 284, n. 8, quoting *Hampton* v. *Chicago,* 484 F. 2d 602, 607 (CA7 1973), cert. denied, 415 U. S. 917 (1974).