Nydia TAVAREZ, Manny Tavarez, d/b/a LaNydia Grocery, Plaintiffs,

v.

Michael O'MALLEY, Roy McCampbell, Phillip Mole, Maurice Iorio, Robert Radek, Richard Bacha and County of Cook, Defendants.

No. 85 C 4283.

United States District Court, N.D. Illinois, E.D.

May 22, 1986.

Daniel Galatzer/Thomas Grippando, Daniel Galatzer, Ltd., Chicago, Ill., for plaintiffs.

Karen Diamond, Asst. State's Atty., Donald J. O'Brien, Jr., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Nydia and Manuel Tavarez, formerly doing business as "LaNydia Grocery" in Schiller Park, Illinois, brought this suit under the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1982), against Michael O'Malley, an inspector for the Cook County Department of Environmental Control ("the Department"), Phillip Mole, the Director of the Department, the County of Cook ("the County") and Schiller Park employees Roy McCampbell, Robert Radak, Robert Bacha and Maurice Iorio ("the Schiller Park defendants"). The Tavarezes allege that they were deprived of their property without due process of law in violation of the fifth and fourteenth amendments to the Constitution when the individual defendants, in response to a gas heater malfunction, sealed the LaNydia Grocery and denied the Tavarezes access to the store for a period of approximately four weeks. The Tavarezes also allege that § 1983 liability should be imposed on the County since O'Malley and Mole were acting under established County policy.[1] Presently before this Court is a motion for summary judgment filed by O'Malley, Mole and the County. For the reasons stated below, the motion is granted.

The parties do not dispute that on November 21, 1983 a gas heater located in the LaNydia Grocery malfunctioned and emitted carbon monoxide fumes which injured several people on the premises. The facts

regarding the defendants' response to this situation, however, are strongly disputed. By the Tavarezes' account, O'Malley and the Schiller Park defendants arrived at the store, shut off the heater and sealed the store entrances with "coroner seals" which pronounced that "Any person breaking or mutilating this seal or entering these premises will be prosecuted to the full extent of the law." They further allege that despite their repeated efforts to gain access to the sealed building in order to protect the inventory and make the necessary repairs to the heater, the Tavarezes were denied access by Mole and O'Malley. Mole allegedly warned the Tavarezes that they would face a year in jail if they broke the seals.

The damages allegedly suffered as a result of these actions stemmed partially from freezing temperatures which caused some water pipes to burst during the time the building was sealed. The resulting flood damaged fixtures and equipment in the store. Furthermore, perishable inventory spoiled or was destroyed by the water during this period. Finally, the Tavarezes assert that their inability to conduct business while the building was sealed destroyed the business and any consumer goodwill which had been established.

### I. *County Liability*

The County contends that it is entitled to judgment as a matter of law because the Tavarezes can show no established or employed County policy which authorized the alleged actions of O'Malley and Mole. We agree. Cook County has an extensive ordinance regulating environmental matters ("the ordinance") which establishes the duties and powers of the County's Department of Environmental Control ("the Department"). The parties point to two different portions of this ordinance to

---

**1.** In Count I, the Tavarezes allege that O'Malley and Mole acted pursuant to County policy and practices. Amended Complaint ¶ 7. In Count II, they plead in the alternative that the defendants *ignored* procedures and regulations of the County and of Schiller Park for dealing with malfunctioning heating units. Amended Complaint ¶ 21. From these allegations, the Court

can infer that the County is not a defendant with respect to Count II since municipal liability under § 1983 must be predicated on some policy, custom or usage of the municipality. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Accordingly, the County is dismissed as a defendant to Count II.

show that a county policy authorizing sealing without notice or a hearing did or did not exist. The Tavarezes cite Section 16–8.4–1 which provides:

a. Any emission of smoke, particulate matter, or other matter (gaseous, liquid, or solid) from any single source in excess of the limitations established in or pursuant to the provisions of this ordinance shall be deemed and is hereby declared to be a public nuisance, and may be summarily abated by the Director. Such abatement may be in addition to the administrative proceedings herein provided.

b. The Director is further empowered to institute legal proceedings for the abatement or prosecution of emissions of smoke, particulate or other matter which causes injury, detriment, nuisance or annoyance to the public or endangers the health, comfort, safety, or welfare of the public, or causes or has a natural tendency to cause injury or damage to business or property. Such abatement may be in addition to the administrative proceedings herein provided.

Cook County, Ill., Ordinance ch. 16, § 16–8.4–1. The Tavarezes claim that the Director's authority to summarily abate a public nuisance under this provision consti-

tutes a county policy sanctioning the sealing of buildings without any sort of hearing. The power of public officials to summarily abate public nuisances existed at common law. *Village of Riverwoods v. Untermeyer*, 54 Ill.App.3d 816, 822, 12 Ill. Dec. 371, 375–76, 369 N.E.2d 1385, 1389–90 (2d Dist.1977). However, the scope of that special remedy, whether conferred by common law or statute, is narrowly limited to doing only what is necessary to eliminate the nuisance. 58 Am.Jr.2d *Nuisances* §§ 195–198 (1971). In this case, a summary abatement merely would have entailed shutting down the defective heating unit, and perhaps cutting off the natural gas. The Tavarezes do not complain that their rights were deprived by that type of behavior on the part of the defendants. Rather, the activity about which they complain could not have been authorized by this part of the ordinance.

This interpretation is bolstered by the fact that a separate ordinance provision sets forth the procedures which the Department must follow in order to seal a building. Section 16–5.5–3(b) of the ordinance establishes detailed procedures for the Director to use before a building is sealed.[2]

2. Section 16–5.5–3(b) provides:
1. Citation, Hearing, and Sealing.
a. After any person has been previously notified of three (3) or more violations of this ordinance within any consecutive 12 month period in respect to the emission of smoke, particulate, or other matter by the same piece of equipment in excess of the emission limitations herein provided or in respect to violations of other requirements provided in this ordinance, such person shall be notified in writing to show cause before the Director on a day certain, not less than 20 days from the date of service of such notice, why the equipment or process causing such violations should not be sealed. This last notice herein provided for may be given by mail, directed to the last known address of the person to be notified, or if such person or his whereabouts is unknown, then by posting a notice on or near the premises at which the violations shall have occurred. Upon the date specified in the notice such person may appear at such hearing in person or by representative, with or without counsel. If such person fails to appear at such hearing or if upon such hearing the Director shall find and determine that

the violations are due to defective equipment or equipment which is incapable of being operated within the maximum emission limitations established by or under this ordinance, or that corrective measures previously ordered by the Director have not been employed to eliminate the causes producing the violations, he may enter an order revoking any certificate or permit outstanding for such equipment or process and directing that the same be sealed by an inspector·or other authorized agent of the Director. In making the finding and determination hereinabove referred to, the Director shall, in the case of smoke density or opacity measurements, take into consideration whether the equipment is capable of being operated within the particulate matter limitations provided in Table 6 of this ordinance.
b. Upon notice and hearing, if notice and hearing has not previously been provided, the Director may order that the use of any fuel-burning, combustion, or process equipment or device shall be discontinued and may seal such equipment or process:
i. When a certificate of operation is refused in the case of any original, annual, or

Among the prescribed prerequisites to sealing is the establishment and notification to the offending party of three violations of the environmental control ordinance within a twelve-month period and written notification requiring the offender to show cause why the equipment or building should not be sealed. Furthermore, the right to a pre-sealing hearing is explicitly preserved under this regulatory scheme. The defendants do not dispute that in order for the Department to lawfully seal any building, the requirements of § 16–5.5–3(b) must be fulfilled. However, the County maintains, and this Court agrees, that since such a carefully constructed procedure for pre-disposition notice and hearing is firmly in place in the ordinance, even if the plaintiffs' allegations of the individual defendants' conduct were true, those acts were not undertaken pursuant to a County policy. Accordingly, the County's motion for summary judgment is granted.[3]

> subsequent inspection, because the person required to procure such certificate has not complied with the provisions of this ordinance;
>   ii. In the case of movable equipment, or portable boilers, or vehicles, when immediate correction of a condition causing a violation of this ordinance is not made by the operator of such equipment, portable boiler, or vehicle when ordered to do so by the Director or his authorized representative.
>   2. Breaking of the Seal.
>   Whenever, in connection with the enforcement of this ordinance, any fuel-burning, combustion, or process equipment or device, or any plant, building, structure, premises, portable boiler, or vehicle, has been sealed at the direction of the Director, the seal shall not be broken or removed except on written order of the Director. The breaking or removal of this seal without such order shall be a violation of this ordinance.
> Cook County, Ill. Ordinance ch. 16, § 16–5.5–3(b).

3. Shortly after this motion became fully briefed, the Supreme Court handed down its opinion in *Pembaur v. City of Cincinnati*, — U.S. —, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). This Court briefly addresses the implications of that opinion on the question of County liability in this case. In *Pembaur*, the Supreme Court held that the *Monell* "official policy" requirement for municipal liability under § 1983 could be established by showing that properly authorized government decision-makers adopted the course of action which is challenged by the plaintiff.

## II. *Liability of O'Malley and Mole*

The facts regarding the participation of O'Malley and Mole in the events which led to the sealing of the building where the Tavarezes' store was located are in substantial dispute.

The dispute regarding O'Malley involves his alleged participation in sealing the building on November 21, 1983. O'Malley states in an affidavit that on November 21, 1983 he visited the building where the Tavarezes' store was located in order to inspect the conditions. However, he claims that he did not shut off any heaters, seal any entrances or post any signs prohibiting entrance. This is corroborated by the deposition testimony of Robert Radak. Radak Dep. at 11–12. However, Manuel Tavarez ("Manuel") testified at his deposition that he personally witnessed O'Malley place a seal on one of the doors to the building. Manuel Tavarez Dep. at 55.[4] This conflict-

*Id.* 106 S.Ct. at 1298–99. This is true even if that action is only undertaken once. *Id.* at 1299. A plurality of the Court added that "municipal liability attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 1300. In the present case, defendant Mole, as Director of the Department, is arguably in a position to establish final county policy with respect to certain matters involving environmental control. Nevertheless, this Court does not interpret the ordinance to permit the Director to deviate from § 16–5.5–3(b) and seal any equipment or building without first following the required procedures. Thus, if Mole acted as the Tavarezes have alleged, he was not choosing from among various policy alternatives but rather, he was acting in direct violation of the ordinance. Thus, the County cannot be held liable in this § 1983 case even under the broad expansion of municipal liability approved of in *Pembaur*.

4. Manuel Tavarez has filed three affidavits in conjunction with this motion. The first and third affidavits are consistent with his deposition testimony about O'Malley. The second affidavit, which was substituted for the first, omits (apparently intentionally) any reference to witnessing O'Malley sealing the building. While this may raise some doubts about Manuel's credibility, such issues are generally not appropriate for disposition on summary judgment where there is conflicting testimony in affida-

ing evidence certainly raises a factual dispute.

With respect to Mole there is similarly disputed evidence. According to the Tavarezes, O'Malley told Manuel at the time of the sealing that he would have to meet with O'Malley and Mole on the following day. Manuel Tavarez Substituted Aff. ¶ 2. There is also evidence that some of the Schiller Park defendants informed Manuel that he could not reopen his business until he contacted the Department.

The parties agree that the Tavarezes met with O'Malley and Mole on November 22, 1983 and with just Mole on at least one other occasion. However, two very different versions of these meetings have been presented to the Court. Both O'Malley and Mole claim that at the November 22 meeting they merely acted in an advisory capacity and informed the Tavarezes what repairs would be necessary. They both deny telling the Tavarezes that they could not gain access to their store. By affidavit, both Manuel and Nydia Tavarez ("Nydia") state that Mole warned them that they would be subject to criminal penalties if they entered the building. They claim that they asked Mole and O'Malley when they could reenter the building and were told to wait about one week.

A second meeting allegedly took place where, according to Nydia, Mole said that the Tavarezes could get into their store if they submitted a statement from their landlord that he would repair the heating unit. Nydia states in their affidavit that she asked Mole to call the landlord, Pat Malfeo, to request such a statement and that Mole obliged. Nydia Tavarez Substituted Aff. ¶ 5. Malfeo confirmed at his deposition that Mole called him with this request. Malfeo Dep. at 26–27. Mole admits making the call, but claims that he did so as a favor to the Tavarezes to help expedite the process, not as a condition to get into the building. Mole Aff. ¶ 8. Malfeo prepared the letter and Nydia claims

that she delivered it to Mole who told her that it was inadequate for the purposes of getting permission to reenter the store. Nydia Tavarez Substituted Aff. ¶ 5. Manuel asserted in his second affidavit that he visited Mole about three weeks after their first meeting, and that Mole then denied for the first time that he had authority to allow the Tavarezes back into the store.

This Court's exhaustive review of the extensive record in this case has revealed significantly different versions of the circumstances surrounding the sealing incident. However, even if there are genuine fact issues on a summary judgment motion, the motion may be granted if, resolving all factual disputes in favor of the non-moving party, the Court finds that the moving party is entitled to judgment as a matter of law nonetheless. *Ross v. Franzen,* 777 F.2d 1216, 1222 (7th Cir.1985). In this case, because we find that the Tavarezes could not maintain a § 1983 action against O'Malley and Mole even if all the allegations made are true, we grant summary judgment in favor of O'Malley and Mole.

■ As the Court discussed above, no provision of the County Environmental Control Ordinance authorizes the Department or Director to seal any building without notice and opportunity for hearing. Thus, if we assume that the Tavarezes' allegations are true, O'Malley and Mole acted far beyond the scope of their duties. In *Hudson v. Palmer,* 468 U.S. 517, ——, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984), the Supreme Court narrowed the scope of constitutional liability by declaring that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." This decision was prompted in part by the notion that pre-deprivation process is impracticable where the government official is acting in a "random and unautho-

---

vits and depositions filed with the Court. 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2726 (1983). Accordingly, it is

the Court's belief that there is a genuine issue of fact regarding O'Malley.

rized manner" since the state cannot possibly know in advance when such an aberration may occur. Here, the actions of O'Malley and Mole as alleged by the Tavarezes clearly were not authorized by the relevant ordinance. Because these intentional acts,[5] if they occurred, were random and unauthorized, the Tavarezes may not maintain the § 1983 claim unless they can show that no adequate post-deprivation remedy is provided by the state.

Not surprisingly, the parties dispute the existence of an adequate state remedy in this case. The Tavarezes claim that a suit against O'Malley and Mole in state court would be barred by § 2–201 and § 2–202 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("the Tort Immunity Act"). Ill.Rev.Stat. ch. 85, §§ 2–201 and 2–202 (1985).[6] O'Malley and Mole argue that these statutes merely provide a limitation on the scope of acts for which a tort suit may be maintained against a public employee. They cite *Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), where the Supreme Court noted that a state remedy need not provide the plaintiff with all relief which might have been available under § 1983 in order to be an "adequate" post-deprivation remedy for constitutional purposes. As discussed below, this Court finds that the above-cited provisions of the Tort Immunity Act would not protect O'Malley or Mole from a state tort suit for their alleged acts

in this case. Accordingly, we find that an adequate post-deprivation remedy exists whereby the Tavarezes will have a meaningful opportunity to recover for their purported damages.

Section 2–202 of the Tort Immunity Act provides that:

> A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton negligence.

Ill.Rev.Stat. ch. 85, § 2–202 (1985). If O'Malley and Mole acted as the Tavarezes allege, which we assume they did for the purposes of this part of our opinion, those acts would not be protected by this provision. The environmental control ordinance leaves little, if any, doubt that the Department officials and employees have no authority to seal buildings without first fulfilling extensive procedural requirements. Thus, a blatant departure from delegated authority such as that alleged here would constitute more than negligence. The term "willful and wanton negligence" has been defined by Illinois courts as behavior which is either intentional or exhibits reckless disregard for the safety of others. *Barth v. Board of Education of Chicago*, 141 Ill. App.3d 266, 275, 95 Ill.Dec. 604, 610, 490 N.E.2d 77, 83 (1st Dist.1986), *citing Schneiderman v. Interstate Transit Lines*, 394 Ill. 569, 583, 69 N.E.2d 293, 300 (1946). The "reckless disregard for the safety of others" language obviously refers to willful and wanton negligence in the context of personal injury suits. Neverthe-

---

**5.** In this discussion, the Court assumes that this action is based on an intentional deprivation of property since the alleged actions of O'Malley and Mole were clearly in contravention of the ordinance. Moreover, negligent deprivations of property by state or local officials without process, even without an adequate post-deprivation state remedy, no longer constitute actionable due process violations. *Daniels v. Williams*, —— U.S. ——, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, —— U.S. ——, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986).

**6.** The Tavarezes also cite sections 2–109 and 2–203 of chapter 85 as providing immunity to the County defendants under Illinois law. Section 2–109 provides that a governmental body

cannot be held liable for an injury caused by one of its employees if the employee is not liable. Ill.Rev.Stat. ch. 85, § 2–109 (1985). The Tavarezes maintain that the immunity provided to Mole and O'Malley would thus bar County liability in state court. Because we find that O'Malley and Mole would not be immune under the Tort Immunity Act, we reject this proposition. Section 2–203 requires a showing of malice on the part of an employee in executing an unconstitutional law before liability may be imposed. Ill.Rev.Stat. ch 85, § 2–203 (1985). This provision is not relevant here since we are discussing a deviation from a law, not the enforcement of an unconstitutional law.

less, the recklessness characterization should carry over to cases involving injury to property and is consistent with the *Barth* court's observation that willful and wanton negligence falls between ordinary negligence and actual malice on the mental state continuum. *Barth,* 141 Ill.App.3d at 276, 490 N.E.2d at 83. Although the question of whether the defendants acted with willful and wanton negligence is ultimately a jury question, *id.,* it appears that the injury for which the Tavarezes seek redress is actionable in the Illinois courts notwithstanding § 2–202.

Section 2–201 of the Tort Immunity Act provides that:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

Ill.Rev.Stat. ch. 85, § 2–201 (1985). This statute establishes extensive protection against suit for decision-makers in local government even if they abuse their discretion. However, this provision clearly does not protect people such as O'Malley who are not in a position to determine policy. A more difficult question is whether this provision immunizes Mole from any tort action brought by the Tavarezes in state court. Even though we have already determined that if Mole acted as alleged he was exceeding the scope of his authority, § 2–201 seems to provide immunity for public employees serving a policy-making function or exercising discretion, even if they abuse that discretion. Hence, Mole would seem to be protected by the statute.

However, the liability shield of § 2–201 has been considerably weakened by a recent Illinois appellate court decision which held that § 2–201 does not provide immunity to public employees whose abuse of discretion is the product of wanton and willful acts. *Barth v. Board of Education of Chicago,* 141 Ill.App.3d 266, 273, 95 Ill.Dec. 604, 608–09, 490 N.E.2d 77, 81–82 (1st Dist.

1986). Prior to the *Barth* decision, the only exception to immunity under § 2–201 was for public officials whose acts were malicious or corrupt. Under the *Barth* court's analysis, § 2–201 now appears to provide immunity only to the extent that § 2–202 does. Since we have already discussed the viability of a state court action against O'Malley and Mole for willful and wanton negligence in the execution of their duties, we find that § 2–201 does not provide immunity to O'Malley or Mole under the facts alleged.

Based on our findings that defendants O'Malley and Mole would not be protected by the Tort Immunity Act in a state suit by the Tavarezes for damage to their store and its inventory, this Court holds that an adequate post-deprivation remedy is available to the Tavarezes, thus removing their case from the ambit of the § 1983 procedural due process action. A state tort suit for injury to their property would provide the Tavarezes with a "meaningful post-deprivation hearing." *Parratt v. Taylor,* 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Thus, even construing the disputed facts in the light most favorable to the Tavarezes, there has been no deprivation of property without due process actionable under § 1983.

Consistent with the analysis in the Court's opinion, summary judgment is hereby entered in favor of the County of Cook, Michael O'Malley and Phillip Mole. It is so ordered.