Nydia **TAVAREZ**, Manny **Tavarez**,
d/b/a LaNydia Grocery,
Plaintiffs,

v.

Michael **O'MALLEY**, Roy **McCampbell**, **Phillip Mole**, **Maurice Iorio**, **Robert Radak**, **Richard Bacha** and **County of Cook**, Defendants.

No. 85 C 4283.

United States District Court,
N.D. Illinois, E.D.

Aug. 8, 1986.

Dan Galatzer, Thomas Grippando, Daniel Galatzer, Ltd., Chicago, Ill., for plaintiffs.

Karen Diamond, Asst. State's Atty., Donald J. O'Brien, Jr., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Nydia and Manuel Tavarez, formerly doing business as "LaNydia Grocery" in Schiller Park, Illinois, brought this suit against City and County officials under 42 U.S.C. § 1983 (1982) alleging that they were deprived of their property without due process of law in violation of the Fifth and Fourteenth Amendments to the Constitution when the individual defendants, in response to a gas heater malfunction, sealed the LaNydia Grocery and denied the Tavarezes access to the store for a period of approximately four weeks. On May 22, 1986, this Court granted summary judgment to the County defendants on the basis that the alleged acts of the two named County officials were random and unauthorized so that pre-deprivation process was not required under *Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908,

1917, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984), because adequate state remedies existed through which the Tavarezes' rights could be vindicated. *Tavarez v. O'Malley*, 635 F.Supp. 1274 (N.D.Ill.1986).[1] Defendants Maurice Iorio, Deputy Superintendent of the Schiller Park Police Department, Roy McCampbell, Health Officer of Schiller Park, and Robert Bacha, a Schiller Park police officer, have now moved for summary judgment. For the reasons stated below, this Court grants their motion.[2]

Summary judgment is appropriate in cases where the moving party shows that no genuine issue of material fact exists and that it is therefore entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir.1984). Furthermore, the motion may be granted even if there are genuine fact issues if, resolving those issues in favor of the non-moving party, the moving party is nonetheless entitled to judgment as a matter of law. *Ross v. Franzen*, 777 F.2d 1216, 1222 (7th Cir. 1985).

With respect to the Schiller Park defendants, the following facts are not in dispute. On November 21, 1983, the date of the gas leak at the Tavarezes' store, McCampbell and Robert Radak, a Schiller Park police officer, met with Iorio in the latter's office where the three of them, along with County defendant Michael O'Malley, decided that the building in which the store was located should be sealed. All four Schiller Park defendants were at the building on that date. Iorio made the decision to lock and seal the building. Maurice Iorio Deposition at 23. The deposition testimony of

1. In our discussion today, familiarity with the Court's earlier opinion is assumed.

2. The fourth Schiller Park defendant, Officer Robert Radak, has been properly served and has not answered or appeared in this action. Where co-defendants have prevailed on the merits of a case in which a jointly liable or similarly-situated defendant has not answered, the lat-

ter should be dismissed as well. *Gulf Coast Fans, Inc. v. Midwest Electronic Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir.1984); 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2690 (1983). Thus, although Radak is technically in default, the Court dismisses him from this suit as well.

the various individuals present reveals that either Radak or McCampbell physically placed the seals on the building, although Bacha had first locked all of the doors with keys he had received from McCampbell. *See* Roy McCampbell Deposition at 18; Richard Bacha Deposition at 13; Robert Radak Deposition at 12. Submitted in conjunction with this motion was a copy of a Miscellaneous Incident Report filled out by Bacha on which he wrote that he and McCampbell advised Manuel Tavarez that he could not open his business again until he first contacted and was granted permission from the Cook County Environmental Control Department. The deposition testimony of the Schiller Park defendants reveals that none of them knew of any official policy or procedure which they were to follow in ordering and carrying out the sealing of a building. Furthermore, none knew of any procedure for determining when the building could be unsealed. Moreover, none of them knew the source of their instructions to Manuel Tavarez that he should contact the Environmental Control Department.

The Schiller Park defendants are sued in their individual and official capacities. In their complaint, the Tavarezes assert that McCampbell, Radak and Iorio sealed the entrances to the store. Amended Complaint ¶ 12. Furthermore, Bacha and McCampbell allegedly refused the Tavarezes permission to enter the store. Amended Complaint ¶ 14. Additionally, the Tavarezes allege that Iorio, Bacha and Radak were aware that the building remained sealed and that such sealing was improper and illegal and that each had the responsibility, authority and obligation to remove the seals. Amended Complaint ¶ 15. Iorio, Bacha and McCampbell move for summary judgment on the basis that they were not acting under the auspices of any established state (*i.e.*, municipal) policy or procedure, which they argue is a fundamental prerequisite to liability under § 1983. The Tavarezes respond that Iorio, as Deputy Superintendent of the Schiller Park Police Department, was "one of the municipality's authorized decision makers" and that his

decision to order the building sealed became a "policy" of Schiller Park.

Counsel on both sides confuse the analytically distinct constitutional concepts of "policy," which is necessary to establish a municipality's liability for the acts of its officials, *see, e.g., Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *Pembaur v. City of Cincinnati,* —— U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), and "established state procedure," which governs procedural due process claims. Although the evidence which might be offered to establish the existence of a "policy" and an "established state procedure" may in some cases overlap, the two remain conceptually distinct. The defendants here argue that they cannot be held liable for their alleged actions because there is no official Schiller Park policy which required their conduct in sealing the Tavarezes' store and preventing the Tavarezes from reentering. The Tavarezes respond that the decision by defendant Iorio to order the premises sealed was sufficient to establish the existence of a municipal policy in Schiller Park under the Supreme Court's recent *Pembaur* decision. Both parties have missed the point. Since the Village of Schiller Park was not named as a defendant in this suit, the *Monell*-based "policy" arguments have no place in this motion. *Monell* and *Pembaur* deal centrally with municipal liability for the unconstitutional conduct of municipal officials. The concern here is not whether there was a Schiller Park policy to deprive persons of their property by sealing buildings so that the Village would be liable, but whether there was a sufficiently "established" state procedure such that a pre-deprivation hearing was constitutionally required. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

■ As discussed in our earlier opinion, *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* —— U.S. ——, 106 S.Ct. 662, 88

L.Ed.2d 662 (1986), held that where the negligent acts of a state official which deprive an individual of property are "random and unauthorized," predeprivation process would be impracticable since it is impossible for the state to anticipate such acts. Consequently, if adequate post-deprivation remedies are available through the state, no actionable due process violation has occurred. Of course, *Parratt* was recently overruled to the extent that negligent deprivations of property without due process are no longer recognized as violations of the due process clause actionable under § 1983 even if *no* post-deprivation remedies are available. *See Daniels v. Williams,* —— U.S. ——, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* —— U.S. ——, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986).[3] Nevertheless, the analysis of *Parratt* had already been extended to bar § 1983 actions for the *intentional* random and unauthorized acts of state officials which result in the deprivation of property so long as an adequate state remedy exists after the fact. *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984).

■ The County defendants to whom we previously granted summary judgment were restricted by an ordinance which provided specific guidance for the sealing of buildings. Thus, it was clear that if they acted as the Tavarezes alleged, they were intentionally circumventing the clear mandate of the County's policies regarding sealing. The problem here is that the Village of Schiller Park had no prescribed method for dealing with situations such as the one which arose when the gas leak occurred at the LaNydia Grocery. None of the Schiller Park defendants was aware of any policy regarding sealing buildings in emergencies. Furthermore, there does not appear to have been a policy controlling when Schiller Park officials could prevent people from reentering a sealed building. But the acts were "authorized" in the sense that an official in Schiller Park who apparently had the authority to order seals to be placed on the Tavarezes' store made the decision to do so. On the other hand, since they had never been confronted with a situation like this one in the past, the acts would also appear to be "random." Thus, the issue to be resolved on summary judgment is whether a deprivation of property resulting from the random and *authorized* acts of local officials represents a constitutional violation in the absence of pre-deprivation process or whether adequate state post-deprivation remedies will suffice.

The Supreme Court's rationale in both *Parratt* and *Hudson* was that pre-deprivation process is impracticable where the government official is acting in a "random and unauthorized manner" since the state cannot possibly anticipate when such an aberration may occur. In *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435–36, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982), the Court distinguished its analysis in *Parratt* by declaring that where deprivations of property at the hand of state officials occur as a result of an "established state procedure" pre-deprivation process is a fundamental constitutional requirement. The decision of Schiller Park officials to seal the building where the Tavarezes' store was located cannot by any means be construed as an established state procedure. However, the officials' conduct is not quite in the same category as the aberrant "random and unauthorized" acts of the officials in *Parratt* and *Hudson.*[4] The record shows quite sufficiently that the defendants responded to the gas leak incident as they saw fit, but that they had never be-

---

3. If the Schiller Park defendants acted negligently, the Tavarezes could not maintain a procedural due process action against them under § 1983 after these recent Supreme Court decisions.

4. In both *Parratt* and *Hudson,* the officials acted in contravention of applicable procedures which had been established to protect the rights of the individuals involved. *Parratt,* 451 U.S. at 543, 101 S.Ct. at 1917; *Hudson,* 468 U.S. at 520, 104 S.Ct. at 3197.

fore been confronted with a similar situation.

In examining the case before us, we note that the random nature of the action taken by the Schiller Park defendants would under the *Parratt/Hudson* analysis support a holding that no due process violation has taken place since a pre-deprivation hearing is as impracticable here as it was in *Parratt* and *Hudson.* On the other hand, the fact that the actions were "authorized" in some sense weighs toward requiring some sort of pre-deprivation process. Nevertheless, there is no indication that this authorization was of the type which would constitute an established state procedure under *Logan.* Accordingly, we hold that the availability of post-deprivation remedies in the present case affords the Tavarezes all the process that was due under the circumstances. The Schiller Park defendants merely responded to a type of emergency situation which they had not previously confronted.[5] The undisputed facts indicate that their conduct was not the result of concerted action designed to implement a regular procedure for the deprivation of property. Rather, the circumstances on the whole appear to negate the practicability of providing or requiring some sort of pre-deprivation hearing. Accordingly, no actionable due process violation has occurred since, as the Court discussed in its earlier opinion, there are adequate state post-deprivation remedies available to the Tavarezes. Accordingly, the Court grants the summary judgment motions of Iorio, McCampbell and Bacha in accordance with this opinion.[6] It is so ordered.

[5.] We note that in *Parratt* the Supreme Court recognized that the impracticability of pre-deprivation process may in some circumstances arise from the necessity of quick action by the State. 451 U.S. at 539, 101 S.Ct. at 1915. While at first glance this would seem to resolve the dispute in the present case, we observe that the quick action exception does not go far enough. Although this might negate the constitutional implications growing from the initial deprivation caused by sealing the building, it would not excuse the alleged continued deprivation resulting from the prevention of the Tavarezes' entry to their store.

[6.] The Court limits its holding today to the facts of this case. We cannot say as a matter of certainty that all cases of "random and authorized" acts will present situations where pre-deprivation process is impracticable. Rather, each case must be examined for evidence that the authorization of the local officials tends more toward the type of established state procedure which gives rise to a pre-deprivation hearing requirement. Where the decision makers are in a position to provide notice as well as authorize the actions which result in the deprivation and the circumstances in which the authorization occurs are less haphazard than those here, there may be more compelling due process concerns.