980 F.2d 737
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Elizabeth Diane DOWNS, Plaintiff-Appellant,
v.
Eldon VAIL, Superintendent, WCCW; Charlotte Blackwell,
Superintendent, EMCF; Robert Schiedler,
Superintendent, OWCC, Defendants-Appellees.
 No. 92-35467.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 23, 1992.*
Decided Dec. 3, 1992.
 
 Before SCHROEDER, FLETCHER and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Elizabeth Diane Downs appeals pro se the district court's dismissal of her 42 U.S.C. § 1983 action challenging her placement in administrative segregation in Washington Correctional Center for Women (WCCW). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part and remand.
 
 
 3
 We construe the district court's dismissal of Downs' action prior to service of process as a dismissal pursuant to 28 U.S.C. § 1915(d), and we review for abuse of discretion. Denton v. Hernandez, 112 S.Ct. 1728, 1734 (1992). Frivolous in forma pauperis complaints may be dismissed sua sponte under section 1915(d). Neitzke v. Williams, 490 U.S. 319, 324 (1989). A complaint is frivolous "where it lacks an arguable basis either in law or fact." Id. at 325.
 
 
 4
 To state a section 1983 claim, the plaintiff must allege facts showing that a person acting under color of state law deprived her of a right, privilege, or immunity secured by the Constitution. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986).
 
 
 5
 Here, Downs filed her civil rights complaint against Eldon Vail, Superintendent of WCCW, and Charlotte Blackwell and Robert Schiedler, superintendents of correctional institutions in New Jersey and Oregon, respectively. Downs alleged that defendants violated her right to due process by placing her in administrative segregation upon her transfer to WCCW. The district court dismissed her complaint with leave to amend on the grounds that defendants Blackwell and Schiedler were not within the jurisdiction of the court and Downs had failed to allege personal participation on the part of Vail. Downs filed her amended complaint against the same three defendants, alleging that it was unconstitutional to confine her to administrative segregation at WCCW for three years. The district court dismissed her action on the ground that Downs had no liberty interest in remaining in the general prison population.
 
 I. Defendants Blackwell and Schiedler
 
 6
 The district court correctly found that it lacked personal jurisdiction over defendants Blackwell and Schiedler, residents of New Jersey and Oregon, respectively. See International Shoe Co. v. Washington, 326 U.S. 310, 318-19 (1945); Dunne v. Henman, 875 F.2d 244, 248 (9th Cir.1989). Accordingly, we affirm the district court's dismissal of Downs' claims against these defendants. See Neitzke, 490 U.S. at 325.
 
 II. Defendant Vail
 
 7
 A protected liberty interest may arise from the due process clause itself or the laws of the states. Hewitt v. Helms, 459 U.S. 460, 466 (1983). The due process clause itself does not create a liberty interest in freedom from administrative segregation. Id. at 468. Thus, we look to Washington state law to determine whether such an interest has been created.
 
 
 8
 State regulatory measures that impose substantive limitations on the exercise of official discretion may create a liberty interest. Olim v. Wakinekona, 461 U.S. 238, 249 (1983). These limitations must contain mandatory language requiring specific substantive predicates. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 462 (1989). A plaintiff must show that particularized standards or criteria guide the State's decision makers. Id.
 
 
 9
 The Washington Administrative Code regulates the placement of inmates in administrative segregation and the intensive management unit (IMU), and provides in pertinent part:
 
 
 10
 (1) The superintendent may segregate an inmate from the general inmate population and assign such inmate to a segregation or intensive management unit if, in the judgment of the superintendent, the presence of such inmate in the general inmate population would constitute a serious threat:
 
 
 11
 (a) To the safety of institution staff, visitors or other inmates;
 
 
 12
 (b) To such inmate's safety;
 
 
 13
 (c) Of an escape by such inmate; or
 
 
 14
 (d) To the orderly operation of the institution.
 
 
 15
 (2) The superintendent must verify the reason for placing the inmate in a segregation or intensive management unit and document the facts supporting such reason.
 
 
 16
 Wash.Admin.Code § 137-32-005. The Code also prescribes specific procedures which must be followed when an inmate is placed in administrative segregation:
 
 
 17
 (1) Immediately after an inmate's initial placement in segregation the hearing officer will inform the inmate in writing of the reason for the inmate's segregation and the date, time and place of the initial review meeting.
 
 
 18
 (2) The hearing officer will meet with such inmate within two working days after initial placement for the initial review of the basis for the assignment of such inmate to administrative segregation status. During this initial review the inmate will be provided an opportunity to respond to the reasons for such inmate's placement in a segregation or intensive management unit.
 
 
 19
 (3) The hearing officer will prepare a written report of the initial review meeting with the inmate and deliver such report to the superintendent. This report will include the information provided to the inmate, the reason for initial placement in a segregation or intensive management unit, the inmate's response to the allegation resulting in the initial placement in a segregation or intensive management unit and the hearing officer's recommendation whether to continue the administrative segregation or to release the inmate to the general inmate population, together with the facts supporting such recommendation.
 
 
 20
 (4) The superintendent will review the hearing officer's report, and within three working days after the inmate's initial placement in segregation will prepare a written decision accepting or rejecting the hearing officer's recommendations. A copy of the superintendent's decision will be forwarded to the inmate and the hearing officer.
 
 
 21
 Wash.Admin.Code § 137-32-010. The Code also prescribes procedures regarding classification meetings for inmates assigned to administrative segregation status, intermediate review for inmates assigned to administrative segregation, and hearings and review for inmates placed on intensive management status. Wash.Admin.Code §§ 137-32-015, 020, 025.
 
 
 22
 This court has not decided the issue of whether these regulations create a liberty interest. See Mendoza v. Blodgett, 960 F.2d 1425, 1429 (9th Cir.), petition for cert. filed, 61 U.S.L.W. 3303 (U.S. Aug. 28, 1992) (No. 92-579). These rules are sufficiently mandatory and particularized that they may create a liberty interest regarding placement in administrative segregation. See Olim, 461 U.S. at 249. Accordingly, we cannot say that Downs' complaint has no arguable basis in law. Further, at this stage of the litigation, the record is not sufficiently developed for us to determine whether Downs was given the process required under these regulations. Accordingly, we reverse as to the claim against Vail, and remand for issuance and service of process. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir.1989).
 
 
 23
 AFFIRMED in part, REVERSED in part and REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3