**Bruce GOLDMAN, as Guardian Ad Litem for Anna Barshop, Incapacitated Person, Plaintiff–Appellee and Cross–Appellant,**

**and**

**Helen Morris, Plaintiff and Cross–Appellant,**

**v.**

**Mary KRANE, In her official Capacity as Manager of the Denver Department of Social Services, Defendant–Appellant and Cross–Appellee.**

No. 87CA1873.

Colorado Court of Appeals, Div. II.

June 15, 1989.

Rehearing Denied July 20, 1989.

Certiorari Denied Jan. 8, 1990.

Law Office of Debra Knapp, P.C., Debra Knapp, Denver, for plaintiff-appellee and cross-appellant.

Law Office of Kathleen Mullen, P.C., Kathleen Mullen, Denver, for plaintiff and cross-appellant.

Stephen H. Kaplan, City Atty., and Frank A. Elzi, Asst. City Atty., Denver, for defendant-appellant and cross-appellee.

Opinion by Judge SMITH.

In this proceeding under 42 U.S.C. § 1983 (1982), Mary Krane, in her official capacity as manager of the Denver Department of Social Services (the department), appeals from a judgment entered on a jury verdict awarding Anna Barshop damages of $135,000. The department contends that the trial court erred in denying its motion for a directed verdict and by improperly instructing the jury. Barshop and her niece cross-appeal the trial court's dismissal of their First Amendment claims. We affirm.

Barshop is a 90–year–old widow who, prior to May 15, 1986, lived alone in a subsidized senior citizen's housing complex. There she received almost daily visits from her niece, who happened to be a physician.

In March 1986, the operator of the housing complex contacted the department with concerns that Barshop was unable to live independently. The operator sought intervention by the department under § 26–3.1–101, et seq., C.R.S. (1988 Cum. Supp.), which authorizes the department to extend protective services to disabled elderly who are being abused, neglected, or exploited.

A department social worker met briefly with Barshop and talked with her niece by telephone. She concluded that Barshop was confused, but because of her niece's involvement, there was no need for the department to intervene. Thus, the investigation was closed in mid April.

However, the housing complex continued to contact the department claiming that Barshop would be "de-admitted" May 15 if the department did not take steps to get her into a nursing home. Thereafter, on May 13, without any further contact with Barshop to evaluate her physical and mental condition, without presenting plans for intervention to either Barshop or her niece, and without investigating the housing complex's claims for impending de-admission, the social worker filed in the Denver Pro-

bate Court an *ex parte* petition for temporary guardianship over Barshop.

The petition was granted and the department was appointed as guardian. The department thereupon, without prior notice to either Barshop or her niece, caused Barshop to be transported to a hospital where she was held incommunicado and where she was subjected to extensive examination. She was then placed by the department in a nursing home facility. During this period, neither Barshop nor her niece were consulted or even advised concerning the existence of the guardianship. Ultimately, however, the niece upon discovery of what had happened was able to have the court substitute herself as guardian in place of the department.

Barshop and her niece brought suit against the department and the housing complex on a multiplicity of claims under 42 U.S.C. § 1983.

After a jury trial, a verdict was returned awarding Barshop damages for unconstitutional deprivation of her liberty and property rights.

### I.

The department contends that the trial court erred in denying its motion for a directed verdict. It argues that there was no showing that the social worker's actions in obtaining the involuntary temporary guardianship for Barshop represented official department policy. We disagree.

A motion for a directed verdict of dismissal should not be granted unless the evidence, when viewed in light most favorable to the opposing party, compels the conclusion that reasonable persons would necessarily reach a verdict in favor of the moving party. *McGlasson v. Barger*, 163 Colo. 438, 431 P.2d 778 (1967).

A municipality is liable under § 1983 when its agent or employee deprives a person of his or her constitutional rights in implementing or executing a policy or custom sanctioned or ordered by officials who have final policymaking authority for the municipality. *St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, when an employee's conduct is unconstitutional, more than an employer-employee relationship must be shown before government liability will attach. *City of Oklahoma City v. Tuttel*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

The department argues that the social worker's act of petitioning the court for temporary guardianship of Barshop was an isolated discretionary act of an employee and that, while this act may have constituted misconduct amounting to a constitutional deprivation, it failed to constitute the official misconduct necessary to impose municipal liability under § 1983. We disagree.

Here, there was evidence that the county director of social services was the final decision maker regarding the initiation of involuntary temporary guardianships. *See* § 26–3–103, C.R.S. (1982 Repl.Vol. 11). There was also evidence that it was the policy or custom of the department's director to pre-sign in blank petitions for guardianship, to make them available to caseworkers, and not to review the petitions once they had been completed. From this evidence, a jury could reasonably infer that the act of the social worker in this instance was the direct consequence of the director's policies. Thus, the trial court properly denied the department's motion for a directed verdict.

### II.

Next, the department argues that the trial court erred in instructing the jury on the department's liability under § 1983. We disagree.

#### A.

First, the department argues that the pertinent jury instruction improperly described the official act which, if proven, constitutes a constitutional deprivation. Further, they argue that the instruction was incomplete because it failed to instruct the jury on the element of fault which is

necessary to impose governmental agency liability.

The instruction in question provides in relevant part that the jury is to return a verdict against the department for deprivation of Barshop's liberty and property rights under the constitution if the following elements are established by the evidence:

"First ... [The department] filed and proceeded with a petition for emergency temporary guardianship ... without having first reasonably determined by a reasonable investigation that:

1. Anna Barshop was found to be a disabled adult, age 65 years or older, who was abused, neglected, or exploited; or

2. Anna Barshop could not validly consent to the offer of protective services, including the offer of medical treatment; or

3. Anna Barshop was incapacitated; or

4. There was an emergency situation warranting the imposition of a temporary guardianship.

Second, [These] acts were taken pursuant to a policy or custom of a governmental entity such as [the department] whether made by its law makers, or by those who edicts or acts may fairly be said to. represent official policy.

Third, [the department] acted under the color of the authority of the State of Colorado.

Fourth [the departments] acts were the proximate cause of the damages sustained by the plaintiff."

■ The department asserts that an emergency temporary guardianship is justified if a reasonable person believes that one of the conditions set forth in the first paragraph of this instruction existed. It further argues that the instruction given improperly set forth an objective standard which is not required under the statutes.

We conclude that the instruction is consistent with § 26–3.1–101, C.R.S., et seq., (1982 Repl.Vol. 11) and related rules and regulations of the state department of social services which outline the required reasonable *determinations*, not beliefs, of officials and support staff in extending services to disabled adults.

■ The department also argues that this instruction should have required the jury to find that the department acted with deliberate indifference or reckless disregard toward Barshop's constitutional rights in petitioning for temporary guardianship.

We agree with the department that the liability of governmental entities under § 1983 includes the element of fault. *See Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (state of mind required varies with the nature of the constitutional right involved). Thus, in analyzing this contention of instructional error, we must determine whether the instruction given was sufficient to advise the jurors that they could not find against the department unless they found some fault on the part of the department in *establishing* or *tolerating* a policy or custom, the application of which could foreseeably result in a deprivation of constitutional rights.

We conclude that the instruction given sufficiently advised the jury on the element of fault. Here, as in *Monell v. Department of Social Services, supra*, the constitutional deprivations resulting from the policy or custom are clearly foreseeable. Thus, the existence of the policy or custom itself presumes a tolerance or deliberate indifference on the part of the department as to the consequences of such policy or custom.

### B.

■ Second, the department argues that another jury instruction improperly permitted the jury to apply the doctrine of *respondeat superior*.

Only those municipal officials who have final policymaking authority may by their actions subject the local government to § 1983 liability. Simply acquiescing in the discretionary decisions made by one's subordinates is not delegation to them of the

authority to make policy. *St. Louis v. Praprotnik, supra.*

The instruction in question provides in relevant part:

"You may find the department liable for the act or decision of its officials or employees only if you believe that the official or employee had the authority to establish the policy for the department with regard to the decision he or she made or the action he or she took that caused injury to Anna Barshop. In other words, the department may be held liable if the officials or employees' acts or decisions can fairly be said to represent official policy of the department.

A governmental entity is not liable for the mere negligence on the part of its employees where said negligence does not amount to governmental policy or custom as described above."

Here, Barshop submitted that the final policymaker regarding involuntary temporary guardianships was the County Director of Social Services. The department, through the evidence it presented and through the instructions it proposed, declined to challenge this assertion. Thus, we conclude that, in this instance, since the identity of the final policymaker was not in issue, and since the statutory scheme appears to support such position, the instruction given was sufficient to prevent the jury from finding the department liable based on the acts of the social worker alone.

### C.

The department next argues that given Barshop's reliance on the existence of an unwritten practice of the department, the trial court erred in refusing to give its tendered instruction defining "custom." Custom, however, is a common term which is neither ambiguous or vague. Furthermore, custom retains its common meaning in § 1983 actions. *See Monell v. Department of Social Services, supra.* Thus, we hold that it was not error for the trial court to refuse the department's instruction.

### D.

Finally, the department argues that another instruction also evidenced error by injecting the doctrine of *respondeat superior* into the case. However, because that instruction deals only with the imputation of knowledge concerning certain facts, and does not address liability, we conclude it was not in error.

### III.

We decline to address the department's other assertions of error because they were either not raised or were not contested or pursued by the department at trial. Thus, we decline to consider them for the first time on appeal. C.R.C.P. 51.

### IV.

Barshop and her niece cross-appeal the trial court's dismissal of their First Amendment claims. Our disposition of the issues raised on appeal and our affirmance of the jury's verdict awarding damages to Barshop makes it unnecessary for us to address this issue.

The judgment is affirmed.

STERNBERG and FISCHBACH, JJ., concur.