Chander **LEWIS**, Administratrix of the Estate of Theresa L. Daniels, deceased, and in her own right

v.

Devon **NEAL**, et al.

Civ. A. No. 95–5164.

United States District Court, E.D. Pennsylvania.

Nov. 9, 1995.

---

Jonathan H. Kaplan, Jacoby and Meyers
Law Offices, Philadelphia, PA, for plaintiff.

Michael P. Dignazio, Nelson & Dignazio, Media, PA, for Yvonne Vest.

Jeffrey M. Scott, Assistant City Solicitor, Philadelphia, PA, for City of Philadelphia, Department of Human Services.

William F. Holsten, II, Holsten & White, Media, PA, for County of Delaware, Delaware County Children and Youth Services.

Stanley R. Kotzen, Media, PA, for City of Chester.

Phillip B. Silverman, Harris & Silverman, Philadelphia, PA, for Children's Choice Inc.

## MEMORANDUM

BARTLE, District Judge.

Plaintiff, Chander Lewis, as Administratrix of the Estate of Theresa L. Daniels, deceased, and in her own right, filed this civil rights action against a number of defendants, including the City of Philadelphia, Philadelphia Department of Human Services (the "City").[1] This tragic case involves a young child who was beaten to death in 1993 while in a foster home. The plaintiff alleges that the City's conduct in this case violated Theresa Daniels' civil rights under Title 42 U.S.C. § 1983.[2] Before the court is the motion of the City for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[3]

Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *See Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir.1980), (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* 519–20 (2d ed.1990)). For purposes of a motion for judgment on the pleadings, this court must interpret the facts alleged in the pleadings and the reasonable inferences that can be drawn therefrom in the light most favorable to the non-moving party. The court is thus required to take as true the factual allegations of the non-movant's pleading, and to treat as false any contradictory allegations in the moving party's pleading. *Id.*

The complaint alleges that sometime prior to June 17, 1993 the City removed Theresa from her mother's custody and became Theresa's legal guardian. The City placed her, through a contractual arrangement, in the foster care of defendant Children's Choice which in turn housed her with Vest, in Chester, Delaware County, Pennsylvania. According to the complaint, on June 17, 1993, Vest left Theresa in the care of Neal, Vest's nephew, while she visited a friend. Neal, who was a minor, severely beat Theresa. She died of injuries from the beating on June 18, 1993.

In order to prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must prove that the conduct complained of was committed by a person acting under color of state law and that the conduct deprived the plaintiff of rights, privileges or immunities secured by the United States Constitution or federal law. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

---

1. Plaintiff also named the following as defendants: Devon Neal ("Neal"), a minor; Yvonne Vest ("Vest"); Children's Choice, Inc. ("Children's Choice"); and Delaware County Children and Youth Services ("Delaware County"). On September 26, 1995, the court granted Delaware County's motion to dismiss plaintiff's complaint as to it for failure to state a claim upon which relief can be granted.

2. 42 U.S.C. § 1983 provides:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

   Plaintiffs' complaint also alleges pendent state law claims against Neal, Vest, and Children's Choice.

3. Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings...."

Plaintiff's complaint appears to assert two theories of liability against the City. Plaintiff first contends that a special relationship existed between Theresa and the City during her foster care. According to plaintiff, such a relationship gave rise to an affirmative constitutional duty on the part of City officials to protect a foster care child such as Theresa from serious harm.

It is now settled that the Due Process Clause of the Fourteenth Amendment [4] does not impose an affirmative duty upon a state to protect its citizens. Rather, it serves as a limitation on a state's power to act, not as an assurance of certain minimal levels of safety and protection. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195, 109 S.Ct. 998, 1002, 103 L.Ed.2d 249 (1989). However, when a state enters into a special relationship with a particular citizen, it can be held liable for failing to protect that citizen from the private actions of third parties. *See D.R. by L.R. v. Middle Bucks Area Vocational Tech. School,* 972 F.2d 1364, 1369 (3d Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993). This liability attaches against a state actor under 42 U.S.C. § 1983 when a state fails, under sufficiently blameworthy circumstances, to protect the health and safety of the citizen to whom it owes an affirmative duty. *Id.* [5]

In *DeShaney,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court held that the government generally has no duty to protect individuals from privately inflicted harms. *Id.* at 195–96, 109 S.Ct. at 1002–03. There, the guardians of a four-year-old child brought suit under 42 U.S.C. § 1983 against a Wisconsin county Department of Social Services. *Id.* at 192–94, 109 S.Ct. at 1001–1002. The guardians claimed that the Department had failed to protect the child from beatings inflicted by his father, which ultimately resulted in irreversible brain damage. *Id.* The plaintiffs claimed that over a 26 month period the Department knew of the abuse but failed to act. *Id.* The

Court determined that "a State's failure to protect an individual against private violence by a third party simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1003. The Court added, ". . . the State does not become the permanent guarantor of an individual's safety by having once offered him shelter." *Id.* at 201, 109 S.Ct. at 1006.

However, the Supreme Court has recognized narrow situations where the state does have a duty to provide protection when the state acts affirmatively to limit the individual's ability to protect himself or herself. *Id.* at 198, 109 S.Ct. at 1004. For example, in *Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251 (1976), the Court held that the state had an affirmative duty to provide adequate medical care to inmates because their incarceration prevented the inmates from caring for themselves. The Court extended this exception in *Youngberg v. Romeo,* 457 U.S. 307, 317, 102 S.Ct. 2452, 2458, 73 L.Ed.2d 28 (1982), holding that the state had a duty to provide involuntarily committed mental patients with services necessary to insure their reasonable safety.

The Court in *DeShaney* noted in its much debated "footnote 9" that "[h]ad the State by the affirmative exercise of its power removed Joshua from free society and placed him in a foster home operated by its agents, we might have a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect." *DeShaney,* 489 U.S. at 201, n. 9, 109 S.Ct. at 1006, n. 9. Although the majority in *DeShaney* did not decide the question of foster care, the Court cited to court of appeals decisions holding "that the State may be held liable under the Due Process Clause for failing to protect children in foster homes from mistreatment at the hands of their foster parents. . . ." *Id.* (citing *Doe v. New York City Dept. of Social Services,* 649 F.2d 134, 141–42 (2d Cir.1981) after remand, 709 F.2d 782 (2d Cir.), *cert. denied sub nom., Catholic Home Bureau v. Doe,* 464 U.S. 864, 104 S.Ct. 195,

---

**4.** The Due Process Clause of the Fourteenth Amendment provides that "no State shall ... deprive any person of life, liberty, or property, without due process of law."

**5.** We need not decide here what specific standard of care is required under the circumstances of this case.

78 L.Ed.2d 171 (1983); *Taylor By and Through Walker v. Ledbetter,* 818 F.2d 791, 794–97 (11th Cir.1987) (en banc), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989). We now squarely face the issue which the Supreme Court raised but did not decide in footnote 9 of *DeShaney* and which the Court of Appeals for the Third Circuit has likewise not resolved: Does a state actor, in this case the City of Philadelphia, owe an affirmative duty under § 1983 to protect a child for whom it is legal guardian and whom it placed in foster care?

The closest case in this circuit on the matter at bar is *D.R. by L.R. v. Middle Bucks Area Vocational Tech. School,* 972 F.2d 1364, 1369 (3d Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993) (*"Middle Bucks"*). *Middle Bucks* involved students who were sexually molested by classmates while attending a public high school. The plaintiffs attempted to hold school system officials liable based upon the custodial relationship between the school system and the child. Under state law, school attendance was compulsory and school officials acted in loco parentis. Plaintiffs maintained they were in the state's custody involuntarily and that it owed a duty to them under § 1983 similar to what it owes to prisoners under *Estelle* and mental patients in *Youngberg,* who are also in the state's custody involuntarily. The court of appeals rejected this argument. It held that substantive due process did not allow plaintiffs to recover against the school system because the state had not rendered the students totally dependent upon the state.

The court explained that students could leave the school building each day and seek help from parents or other sources. *Middle Bucks,* 972 F.2d at 1371. It noted that parents have the option to send a child to a learning institution other than a public school. *Id.* The court also emphasized that parents remain a child's primary caretaker, despite mandatory school attendance, and that students do not rely on schools to provide their basic human needs. *Id.* at 1371–72.

A child for whom the City is legal guardian and who is involuntarily placed in foster care presents a sharp contrast to that of a public school student. The court of appeals in *Middle Bucks,* albeit in dicta, acknowledged this distinction. The court observed:

a relationship between the state and foster children arises out of the state's affirmative act in finding the children and placing them with state-approved families. By so doing, the state assumes an important continuing, if not immediate, responsibility for the child's well-being. In addition, the child's placement renders him or her dependent upon the state, through the foster family, to meet the child's basic needs.

*Id.* at 1372 (citing *Taylor By and Through Walker v. Ledbetter,* 818 F.2d 791 (11th Cir. 1987), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989).[6] Thus, the state exercises control and dominion over the child in a foster care situation. The foster child is wholly dependent on the state for food, shelter, clothing and safety. A foster child has no power in any real sense to provide for himself or herself. According to the complaint, Theresa was removed involuntarily from her natural parent. The City apparently remained Theresa's legal guardian throughout her foster home placement. The Supreme Court has explained that *Estelle* and *Youngberg* together stand for the proposition that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney,* 489 U.S. at 199–200, 109 S.Ct. at 1005–06. For all practical purposes, Theresa was not free to leave her foster care placement. It was this involuntary factor that the court of appeals relied on in distinguishing persons committed to a prison or institution from students attending public school.

■ The City argues strenuously that plaintiff has stated no claim for relief against it because Devon Neal, Theresa's killer, was not a state actor but simply the minor nephew of Yvonne Vest, the foster parent. This

---

6. This analysis does not change because in the case at bar the child was placed in the home of

Vest through an intermediary, defendant Children's Choice.

contention is without merit. In cases involving a special relationship, the state may be liable under § 1983 even when the underlying injury is caused by a private third party. *See Middle Bucks,* 972 F.2d at 1369. It is therefore irrelevant whether Theresa's foster parent or her killer acted under color of state law.

 Plaintiff asserts a valid § 1983 claim based on the City's special relationship with Theresa Daniels. Accordingly, the court will deny defendant's motion for judgment on the pleadings with respect to this theory.

Plaintiff's complaint asserts a second theory of recovery, this one based on *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In that case, pregnant teachers challenged a policy requiring them to take unpaid leaves of absence. The Court held that a municipality could be liable for their unconstitutional official policies, practices or customs. Here, plaintiff contends that the City maintained a policy, practice, or custom of failing to evaluate, inspect, supervise or otherwise monitor defendants Children's Choice and Vest.

A § 1983 claim which asserts "liability of municipal policy makers for policies, practices or customs recklessly established or maintained is not dependent upon the existence of a 'special relationship' between the municipal officials and the individuals harmed." *See Stoneking v. Bradford Area School District,* 882 F.2d 720, 725 (3d Cir. 1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990) (*"Stoneking II"*). In *Stoneking II,* the court of appeals recognized that state defendants may be held liable for deliberately and recklessly establishing and maintaining a custom, practice or policy which caused harm to a student when a teacher sexually molested a student. *Id.* The court noted that nothing in *DeShaney* "suggests that state officials may escape deliberate indifference to actions taken by their subordinates." *Id.* The court distinguished *DeShaney* on the ground that the abuse there resulted at the hands of a private actor, the boy's father, rather than an agent of the state, a public school teacher.

However, in *Middle Bucks,* the court of appeals held that plaintiffs had no cause of action under a *Monell* theory, because the underlying injury was caused by other students, who were private third parties. The court of appeals stated that "this case lacks the linchpin of *Stoneking II,* namely, a violation by state actors.... Thus, § 1983 liability may not be predicated upon a Stoneking II type theory because private actors committed the underlying violative acts." *Middle Bucks,* 972 F.2d at 1376. The case at bar is indistinguishable from *Middle Bucks* in this regard. Devon Neal, like the students in that case, and like the child's father in *DeShaney,* is not a state actor. Therefore, plaintiff's claim for § 1983 liability under *Monell* will be dismissed.