# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Pancho's LLC,**
**Plaintiff Below, Petitioner**

**vs)  No. 17-1146** (Jackson County 13-C-98)

**James T. Hughes, Margaret Ritchie,**
**Joyce Robinson, Terri Ranson,**
**James McCoy, Marsha Geyer,**
**Keith King, Judith Miller,**
**in their official and individual capacities**
**as members of the**
**Jackson County Board of Health,**
**Jonathan Graziani, Inspector for the**
**Jackson County Health Department, and**
**Susan Hosaflook, Administrator of the**
**Jackson County Health Department,**
**Defendants Below, Respondents**

**FILED**

**September 9, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Pancho's LLC, by counsel George R. Higinbotham, Jr. and Forrest A. Bowen, appeals the order of the Circuit Court of Jackson County, entered on December 4, 2017, that denied petitioner's motion for summary judgment and granted respondents' motion for summary judgment. Respondents appear by counsel Jeffrey W. Lilly.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Pancho's LLC ("Pancho's") is a restaurant in Jackson County ("the county"). Respondent Jonathan Graziani inspected Pancho's on behalf of Respondent Jackson County Health Department ("the health department") in April of 2011. He found numerous violations of the 2005 Food Code ("the food code"), a product of the federal Food and Drug Administration that was adopted and enforced by the county. Mr. Graziani ordered the restaurant immediately closed. He returned to Pancho's the day after the closure, found the conditions improved, and authorized the restaurant's immediate reopening. Pancho's does not challenge the violations Mr. Graziani reported upon inspection of the restaurant, or the resultant closure.

1

Pursuant to a policy enacted by the health department in 2003, under which it forwarded its health inspection scores to a local newspaper for publication, the results of Mr. Graziani's inspection were published on August 31, 2011, alongside the scores of several other eateries. The paper made no mention, however, of the restaurant's swift correction or the follow-up inspection that led to the restaurant's prompt reopening. Pancho's brought the omission of this information to the health department's attention in September of 2011, but there is no evidence that the newspaper published a correction or otherwise reported the restaurant's speedy remediation.

Pancho's filed the complaint initiating this action in August of 2013. It asserted that respondents' publication policy deprived it of prior notice and an opportunity to be heard, thereby denying Pancho's the right of due process. The parties conducted discovery and filed dueling motions for summary judgment. The circuit court entered an order denying petitioner's motion and granting respondents' motion on December 4, 2017.

Pancho's assigns three errors, paraphrased here. First, the restaurant argues that the circuit court "failed to recognize" that a government "sanction" threatening financial harm requires due process of law. Second, it argues that the county's policy of publication is neither grounded in nor permitted by law. Finally, Pancho's argues that the court erred in failing to recognize "goodwill" as a proprietary interest, because the food code guarantees due process. As is customary in our consideration of a circuit court's entry of summary judgment, we apply a de novo standard of review. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

The first and third assignments of error assert that the publication of the violations the restaurant committed, with no accompanying explanation of the quick correction, injured Pancho's. More specifically, Pancho's asserts that it has articulated a "constitutional tort" claim pursuant to 42 U.S.C. § 1983 based on the Fourteenth Amendment of the United States Constitution.[1]

We have explained:

> Title 42, U.S.C.A., § 1983 provides in pertinent part:
>
> > "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."
>
> This civil rights statute does not create substantive rights, but merely provides a claim for relief for rights elsewhere secured. Thus, § 1983 claims must specifically allege a violation of the constitution or "laws" of the United States. *See Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S. Ct. 2689, 2694, n. 3, 61 L.Ed.2d 433 (1979). In order to recover damages under § 1983, a plaintiff must show that (1)

---

[1] Pancho's also asserts that its due process rights provided by article III, section 10 of the West Virginia Constitution were violated.

"the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

*Hutchison v. City of Huntington*, 198 W. Va. 139, 151-52, 479 S.E.2d 649, 661-62 (1996) (emphasis in original).

Pancho's grounds its § 1983 claim in the due process guarantee of the Fourteenth Amendment which, so far as applicable to the questions here considered, reads as follows: "nor shall any State deprive any persons of life, liberty, or property, without due process of law." Thus, only an interest in a matter of life, liberty, or property invokes due process considerations. *See Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). Here, Pancho's claims a liberty or property interest in reputation or goodwill.[2]

The Supreme Court of the United States instructs that a claim cognizable under § 1983 in a situation such as this—essentially, a charge that the government defamed petitioner—would necessarily be supported by one of the following premises:

> The first is that the Due Process Clause of the Fourteenth Amendment and § 1983 make actionable many wrongs inflicted by government employees which had heretofore been thought to give rise only to state-law tort claims. The second premise is that the infliction by state officials of a "stigma" to one's reputation is somehow different in kind from the infliction by the same official of harm or injury to other interests protected by state law, so that an injury to reputation is actionable under § 1983 and the Fourteenth Amendment even if other such harms are not.

*Paul v. Davis*, 424 U.S. 693, 699 (1976). The Supreme Court found neither premise to be true, ultimately holding "that the interest in reputation asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." *Id.* at 712. Prior to so holding, the Court noted that Mr. Davis had asserted that his "right to privacy" was violated, but that Mr. Davis did not assert a claim that would create a substantive due process liberty interest. The Court explained that the claim failed because it was "based, not upon any challenge to the

---

[2] Petitioner's argument generally refers to the denial of due process, which it occasionally qualifies as procedural in nature. We therefore address petitioner's arguments as if it has specifically argued that it was denied procedural due process, but note principles of substantive due process where relevant. The substantive component of "the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citations omitted). "[S]ubstantive due process rights are created only by the Constitution," unlike procedural due process rights, for which the interest is derived from state law. *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985).

State's ability to restrict his freedom of action in a sphere contended to be 'private,' but on a claim that the State may not publicize a record of an official act like an arrest. None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner." Syl. Pt. 2, in part, *id.*

Pancho's would distinguish its case from *Paul* on the ground that *Paul* involved an application of Kentucky law, and that local jurisprudence provides rights that Kentucky does not. The Supreme Court explained that "Kentucky law does not extend to respondent any legal guarantee of present enjoyment of reputation which has been altered as a result of petitioners' actions." *Id.* at 711-12. Pancho's argues that it finds itself in a different situation because the following food code language imbues it with the right to protection of its business goodwill:

> It is imperative there be clearly stated and legally sound rules that include the criteria for compliance and enforcement, the responsibilities of all parties, sanctions for noncompliance, and due process guarantees. . . .

> The Regulatory Authority shall justly apply remedies according to law and this Code, to preserve the rights to equal protection and due process of a person to whom the remedies are applied.

The Supreme Court explained that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. The food code language cited by Pancho's does not create an entitlement to goodwill. Though it generally assures the just application of remedies according to law, it, like the Kentucky jurisprudence discussed by the *Paul* Court, offers no "legal guarantee of present enjoyment of reputation . . . ." We therefore find the legal principles indistinct from *Paul*, and find that the circuit court did not err in this regard.

We turn our attention to the second assignment of error asserted by Pancho's, wherein it argues that there is no legal authority for publication, and further argues—in a brief paragraph, but citing no legal precedent—that the health department exceeded its authority in engaging in publication because it did not vet its publication "rule" through the process described in the state Administrative Procedures Act. A "rule," according to West Virginia Code § 29A-1-2(j),

> includes every rule, standard or statement of policy or interpretation of general application and future effect, including the amendment or repeal of the rule, affecting constitutional, statutory or common law rights, privileges or interests, or the procedures available to the public, adopted by an agency to implement, extend, apply, interpret or make specific the law enforced or administered by it or to govern its organization or procedure, but does not include rules relating solely to the internal management of the agency, nor rules of which notice is customarily given to the public by markers or signs, nor mere instructions.

We find that the health department's practice of disclosing its inspection results for publication does not fall under the purview of this statute, and therefore need not be addressed in

the legislative rule-making procedure, because it does not affect public rights or the procedures available to the public. The mere provision of information regarding health inspections to the media, which is at liberty to publish or decline to publish such information, does not establish a policy subject to the Administrative Procedures Act. As discussed above, Pancho's has failed to establish that it enjoys constitutional protections from the harms it asserts. Furthermore, in the brief argument in support of this assignment of error, Pancho's did not cite any statute or common law precedent establishing those asserted rights. We further find that there is no prohibition, in the food code or otherwise, of the reporting of health department inspection results.[3] The circuit court did not err on this basis.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  September 9, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[3] We emphasize that Pancho's did not challenge Mr. Graziani's findings. We also note that "[e]very person has a right to inspect or copy any public record of a public body in this state" unless the record is specifically exempted. West Virginia Code § 29B-1-3(a), in part. Pancho's has not argued that the published documents were exempt records.