# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1934MN

_____

|  |  |  |
|---|---|---|
| Gerry C. DuBose, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| | * | On Appeal from the United |
| John D. Kelly, individually and as | * | States District Court |
| an agent of Hanft, Fride, O'Brien, | * | for the District of |
| Harries, Swelbar & Burns, P.A.; | * | Minnesota. |
| Jennifer L. Cook, individually and as | * | |
| an agent of Hanft, Fride, O'Brien, | * | |
| Harries, Swelbar & Burns, P.A.; and | * | |
| Hanft, Fride, O'Brien, Harries, | * | |
| Swelbar & Burns, P.A., | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: May 13, 1999

Filed: August 17, 1999

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.


This case arose out of a state-court lawsuit brought by Gerry DuBose against his former attorney, Newton S. Friedman. DuBose lost that suit. Friedman had

represented DuBose in an employment-discrimination suit in federal court. Before that suit was resolved, DuBose brought an action in a state court against Friedman claiming malpractice, breach of contract, and breach of fiduciary duty over Friedman's alleged mishandling of the suit. After he lost the suit against Friedman, DuBose filed the present action under 42 U.S.C. § 1983, alleging that Friedman, the attorneys who represented Friedman, and the state trial judge who heard the suit all conspired to deprive DuBose of his right to due process. Friedman died before he could be served, and the state judge was dismissed by stipulation, leaving only the attorneys who represented Friedman as defendants. The District Court granted summary judgment for these defendants. DuBose now appeals, and we reverse and remand.

## I.

This court reviews de novo the grant of summary judgment, using the same standard employed by the District Court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. The standard requires determining both whether a fact is "material" and whether the dispute over that fact is "genuine." Materiality is determined by the applicable substantive law. Material facts are those which might affect the outcome of the lawsuit. A dispute over an issue of fact is "genuine" if there is sufficient evidence to allow a reasonable jury to find for the non-moving party on that issue.

The claim at issue here is for a violation of DuBose's right to due process. This violation was the result of an alleged conspiracy involving Friedman, Judge David S. Bouschor, the state trial judge who presided over DuBose's suit against Friedman, and the attorneys who defended Friedman. We state the facts in the light most favorable to DuBose, assuming them to be true, because he was the party opposing summary judgment. Whether these facts can be proved at trial to the satisfaction of a jury of course remains to be seen. According to DuBose, on or about September 30, 1994, he attended a pre-trial conference in Judge Bouschor's chambers. Also present at the

conference were Friedman and Friedman's attorneys, John D. Kelly and Jennifer L. Crook. DuBose's account of the conference and other factual allegations are taken from two sources: the affidavit he filed in response to the Defendants' Motion for Summary Judgment, and the affidavit he filed as part of his collateral attack on the state-court judgment. This second affidavit was filed in the District Court by the defendants in this suit as an exhibit to their summary judgment memorandum.

The affidavits state:

Immediately after the pre-trial conference affiant witnessed at the entry to Judge David S. Bouschor's chambers door the following: Judge David S. Bouschor hugging, patting on back, and high five hand shaking rendered to Defendant Newton S. Friedman;

All parties . . . left Judge David S. Bouschor's chambers and walked within the courtroom, and affiant left the courtroom, but Judge David S. Bouschor, John D. Kelly, Jennifer L. Crook and Newton S. Friedman failed to leave the courtroom after affiant waited approximately ten (10) minutes outside of Judge Bouschor's courtroom door. Upon affiant entering the courtroom from waiting as stated above; affiant witnessed that Judge David S. Bouschor, John D. Kelly, Jennifer L. Crook and Newton S. Friedman had entered Judge Bouschor's chambers and closed the chambers door, this chambers door was left opened during the pre-trial conference;

Since affiant had witnessed some form of celebration as stated . . . above; affiant listened at the chambers door of Judge Bouschor and witnessed the following: Judge David S. Bouschor, John D. Kelly, Jennifer L. Crook and Newton S. Friedman conspiring planning and plotting a conspiracy to prevent the Defendant Newton S. Friedman from being damaged in the above-referenced matter as they were going over each and every trial exhibits . . .;

There were many pros and cons stated by all parties as named . . . above as they were going over affiant's trial exhibits. In part

Judge David S. Bouschor stated to John D. Kelly, Jennifer L. Crook and Newton S. Friedman in so many words as follows: All of affiant's trial exhibits are covered; and Defendant Newton S. Friedman can enjoy his retirement, etc.

Aff. of Gerry C. DuBose, ¶ ¶ 2(c)-2(f), Defs.' Mot. for Summ. J., Ex. 24.

DuBose further alleged:

On October 11, 1994, at 1:30 P.M., the state civil matter of Gerry C. DuBose v. Newton S. Friedman was scheduled for trial, and before the state civil matter was called for trial, the presiding judge David S. Bouschor and John D. Kelly were engaged in an ex parte meeting for no less than thirty (30) minutes, thereafter, the appearance of affiant within Judge David S. Bouschor courtroom. John D. Kelly after no less that thirty (30) minutes as witnessed by affiant in the chambers' of David S. Bouschor; left Judge Bouschor's Chambers' and came into the courtroom where affiant was sitting and told affiant that Judge Bouschor wanted to see us within his chambers' . . ..

Upon going to Judge Bouschor's Chambers' as stated . . . above; affiant, John D. Kelly, Jennifer L. Carey, . . . and Defendant Newton S. Friedman were presence in Judge Bouschor's Chambers'. John D. Kelly introduced a notice of motion and motion, not a motion in limine to Judge Bouschor. This motion was specifically designed to deprive affiant of due process of law and equal protection of the law as to the claims before the court.

Aff. of Gerry C. DuBose, ¶ ¶ 45 and 46, filed Sept. 10, 1997.

## II.

We first address the question of our jurisdiction. Judgment was entered for the defendants on January 6, 1998. Pursuant to Local Rule 7.1(g), on January 15, 1998, DuBose submitted a motion for leave to file a motion to reconsider.[1] The defendants opposed the request by letter on February 9, 1998. The request was denied by order of the District Court dated March 4, 1998. DuBose filed his notice of appeal on March 17, 1998, referencing both the January 6 and March 4 orders.

---

[1] The Rule provides as follows:

> Motions to reconsider are prohibited except by express permission of the Court, which will be granted only upon a showing of compelling circumstances. Requests to make such a motion, and responses to such requests, shall be made by letter to the Court. . ..

We doubt that the local rule was intended to apply to post-judgment motions filed within the time limit prescribed in Fed. R. Civ. P. 59(e). This rule expressly authorizes the filing of motions to alter or amend a judgment. Litigants have a right, granted by the Federal Rules of Civil Procedure, to file such motions. We take it that the local rule setting out a special procedure for "motions to reconsider" (a term not found in the Federal Rules of Civil Procedure) was intended to apply to litigants' desire to get reconsideration of pre-judgment actions by the trial court, for example, an order denying a motion for summary judgment, an order compelling discovery, or the like. We need not pursue these issues. As explained in the text, the plaintiff did comply with the local rule, and, by doing so within 10 days of the entry of judgment, also complied with Fed. R. Civ. P. 59(e). His notice of appeal, which was filed within 30 days of the District Court's order denying the motion for leave to file, was therefore timely.

The Federal Rules of Appellate Procedure generally require that the notice of appeal be filed within 30 days after the judgment appealed from is entered. Fed. R. App. P. 4(a)(1)(A). If , however, a party files certain post-judgment motions within the prescribed time period, the time to file an appeal runs from the entry of the order disposing of the motion. Fed. R. App. P. 4(a)(4). In this case the motion was actually a request to file what was styled a "Motion to Reconsider," and was made within ten days of the judgment. Although such a motion is not provided for by name in the rules, it was the functional equivalent of a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e). See Sanders v. Clemco Industries, 862 F.2d 161 (8th Cir. 1988). Therefore, the time to appeal began to run on March 4, 1998, the date of the order disposing of this motion. Fed. R. App. P. 4(a)(4)(A)(iv). DuBose's notice of appeal was filed within the prescribed time, and we have jurisdiction to hear his appeal.

## III.

"[I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law;  and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniel v. Williams, 474 U.S. 327 (1986). For the purposes of summary judgment, DuBose has satisfied both requirements.

## A.

The defendants remaining in this suit are private citizens, and although they are attorneys, the conduct of counsel generally does not constitute action under color of law. The Supreme Court, however, has held that private citizens who act in concert with state officials may be liable under Section 1983:

To act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions . . .. [H]ere the allegations were that an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge. Under these allegations, the private parties conspiring with the judge were acting under color of state law . . .. Private parties who corruptly conspire with a judge in connection with such conduct are thus acting under color of state law within the meaning of § 1983 . . ..

Dennis v. Sparks, 449 U.S. 24, 27-29 (1980). For purposes of determining the liability of private parties, it does not matter whether the state official is motivated by avarice, as in Dennis, or favoritism, as alleged here. The key inquiry is whether the private party was a willful participant in the corrupt conspiracy. In order to defeat a motion for summary judgment, DuBose must offer evidence sufficient to support the conclusion that the defendants "directed themselves toward an unconstitutional action by virtue of a mutual understanding," and provide facts which would establish a "meeting of the minds." White v. Walsh, 649 F.2d 560, 561 (8th Cir.1981).

DuBose offered evidence that, if believed, would allow a jury to conclude that there was a mutual understanding among Judge Bouschor, Friedman, and Friedman's attorneys to "fix" the trial. DuBose's evidence shows that Friedman's attorneys were present when Judge Bouschor assured Friedman that he would be able to enjoy his retirement. DuBose alleged through a sworn affidavit that he personally overheard this statement as part of an ex parte discussion of how best to "cover" DuBose's proposed trial exhibits. DuBose further stated that Friedman's attorneys participated in this discussion and another one immediately before trial. In addition, Friedman's attorneys submitted motions and requested rulings from Judge Bouschor after this alleged conversation took place. Such advocacy is, in most situations, completely legitimate.

An attorney, however, who participates in corrupt proceedings by continuing to practice in front of a judge who is known to have preordained an outcome in the attorney's favor serves only to compound the corruption.

We emphasize that more is involved here than a simple display of cordiality between a judge and the lawyers for one party. More is involved than an ex parte contact between the judge and these lawyers. Such incidents can create an appearance of impropriety, and can, in some circumstances, violate ethical norms, but they are not usually serious enough to justify an inference of deliberate bias or prejudgment. For us, the key factor in the case is the Judge's assurance, given in private to Mr. Friedman, that he could "enjoy his retirement," and that Mr. DuBose's "trial exhibits [were] . . . covered . . .." In context, these statements could reasonably be taken by a finder of fact to mean that the judge, Mr. Friedman, and Mr. Friedman's lawyers had all agreed, in advance, that Mr. Friedman would win the case. The lawyers' continued appearance before the judge with the knowledge that such an assurance had been given would justify an inference that they had acquiesced in this corrupt agreement.

B.

The second element of a claim under Section 1983 requires DuBose to identify the particular right that has been violated. DuBose alleged that his right to due process was violated by the conspiracy to "fix" his civil trial. The violation does not depend upon whether the result of DuBose's trial would have been the same without corruption, or whether all of the rulings made by Judge Bouschor at the request of Friedman's attorneys were correct when viewed in hindsight. The Due Process Clause of the Fourteenth Amendment "requires that action by a state through any of its agencies must be consistent with the fundamental principles of liberty and justice which lie at the base of our civil and political institutions, which not infrequently are designated as 'the law of the land.' " Buchalter v. New York, 319 U.S. 427, 429 (1943) (quoting Hebert v. Louisiana, 272 U.S. 312, 316-17 (1926)). In his argument before the Supreme Court

in the Dartmouth College Case, Daniel Webster gave what is perhaps the most often quoted definition of the phrase "law of the land." Trustees of Dartmouth College v. Woodward, 4 Wheat. 517, 581 (1819). "By the law of the land, is most clearly intended, the general law; a law, which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial." Id. In this case, if DuBose's eyewitness account of the events is accepted as true, the trial was meaningless and the judgment predetermined. The law did not hear until after it had condemned. Whether his account is to be believed is a matter for the jury.

IV.

For the foregoing reasons, the judgment for the defendants is reversed and the matter is remanded for further proceedings consistent with this opinion. We express our appreciation to appointed counsel for appellant. He has been of significant help to the Court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.