IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 11, 2001

# BILLY LATTIMER v. TENNESSEE DEPARTMENT OF CORRECTION, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 98-489-II    Carol McCoy, Chancellor**

---

**No. M2000-03126-COA-R3-CV - Filed April 17, 2002**

---

A prisoner filed a lawsuit against the Department of Correction and some of its employees, claiming that the employees had confiscated and destroyed his photo albums, and that their actions amounted to an unconstitutional deprivation of his due process rights. The trial court dismissed the suit without prejudice, ruling that the prisoner had only stated a claim for ordinary negligence against the State, and thus that the only forum available to him was the Tennessee Claims Commission. We reverse in part and affirm in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part; Reversed in Part; and Remanded**.

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, joined.

Billy Lattimer, Mountain City, Tennessee, Pro Se.

Paul G. Summers, Attorney General & Reporter; Michael Moore, Solicitor General; and Kimberly J. Dean, Deputy Attorney General, for the appellee, Tennessee Department of Correction, et al.

## OPINION

### I. A PHOTO COLLECTION IS DESTROYED

On February 17, 1998, Billy Lattimer filed a Petition for Declaratory Judgment under the Uniform Administrative Procedures Act (UAPA), Tenn. Code. Ann. § 4-5-101 et seq. The petition named as respondents/defendants the Tennessee Department of Correction (TDOC), the TDOC Commissioner, and eight departmental employees. Mr. Lattimer, an inmate in the Department's Northeast Correctional Center, claimed that the defendants had destroyed or allowed the destruction of personal property of both sentimental and monetary value.

All the subsequent proceedings on Mr. Lattimer's claims involved only jurisdictional issues, and the Department neither denied nor admitted the facts alleged in his petition. The following discussion therefore necessarily relies entirely upon the statements contained in his petition and his brief on appeal, and the final resolution of his claims will depend on his ability to prove his allegations.

Mr. Lattimer claimed that he had accumulated a large collection of photographs while incarcerated at Northeast Correctional Center (NECC), acquiring and possessing these photos with both the knowledge and permission of the Tennessee Department of Correction. His collection included commercially developed photos of his daughter, of his grandparents, and of friends and relatives both living and deceased, as well as a great number of Polaroid pictures of his family taken during their visits to him, which were produced as part of a prison photo project.

In 1996, TDOC Commissioner Donal Campbell announced via memorandum a change in the Department's policies regarding possession of photographs by inmates. Under the new policy, inmates could no longer acquire Polaroid photos, but prisoners already in possession of such photos could retain them unless their security level was enhanced due to a disciplinary infraction, or they were permanently transferred to another TDOC facility. Individuals who were transferred were permitted to mail their photos elsewhere, but if this was not accomplished within thirty days, the photos were to be destroyed.

In February of 1997, Mr. Lattimer was temporarily removed from NECC for a court appearance. While he was gone, correctional officers confiscated two bound photo albums, apparently containing all of the prisoner's photographs. Mr. Lattimer filed a grievance to obtain the return of the albums. The grievance committee conducted a hearing on March 27, 1997, and issued a recommendation that appears to have favored the return of the albums. Warden Howard Carlton subsequently overruled the recommendation. Following an appeal by Mr. Lattimer, Assistant Commissioner Charles Bass concurred with the Warden's decision. The prisoner then inquired about mailing the confiscated photographs out of the facility, and was informed that they had already been destroyed.

Mr. Lattimer subsequently filed the petition described above in the Chancery Court of Davidson County. The individuals named in the petition as defendants/respondents included Corporals Barlow and Morefield, the two property room officers who had allegedly confiscated and destroyed the photographs, as well as Warden Carlton, Assistant Commissioner Bass, Commissioner Campbell, and three departmental employees whose connection to the actions complained of was not explained. The petitioner claimed that the monetary value of the destroyed photographs was $3,600, and he asked the court to award him this sum, as well as punitive damages of $15,000 for each named defendant. He also asked for a declaratory judgment that the defendants had violated his constitutional due process rights, and for an order barring the confiscation of any other Polaroid photographs in the possession of TDOC prisoners.

## II. COURT PROCEEDINGS

On March 20, 1998, the Chancery Court ruled on Mr. Lattimer's petition. The court found that the action before it was primarily an action seeking damages for loss of property. Noting that Tenn. Code. Ann. § 16-11-102 denies the Chancery Court jurisdiction over unliquidated damages claims for injuries to persons or property not resulting from breach of contract, the court concluded that it was therefore compelled to dismiss the petition.

Mr. Lattimer appealed the ruling to this court. Upon considering the record, we reversed the chancery court's determination that it could not exercise jurisdiction over this case. *Lattimer v. Tennessee Dept. of Correction,* App. No. 01A01-9804-CH-00200 (Tenn. Ct. App. Sept. 29, 1999). We observed that Section (b) of Tenn. Code. Ann. § 16-11-102 mandates transfer to circuit court rather than dismissal when a party objects to the chancery court exercising jurisdiction over an unliquidated damage suit. It also allows the chancery court to hear and determine such a case "upon the principles of a court of law" if no objection is made. Since no objection to jurisdiction had been filed in this case, we concluded that Mr. Lattimer was entitled to be heard in chancery court.

We also ruled, however, that Mr. Lattimer's claim for Declaratory Judgment under the Uniform Administrative Procedures Act was fatally flawed. Tenn. Code. Ann. § 4-5-224 of the UAPA allows a party to seek a declaratory judgment to challenge the "legal validity or applicability of a statute, rule or order of an agency to specified circumstances." A prerequisite for such an action is that the party first seek a declaratory order from the agency involved. Tenn. Code. Ann. § 4-5-224(b). There was no allegation that the petitioner ever sought such a declaratory order. Thus, to the extent that the trial court's dismissal of the petition was also a dismissal of the claim under Tenn. Code. Ann. § 4-5-224, we affirmed.

On remand, the chancery court considered Mr. Lattimer's claims, apart from those that are cognizable under the UAPA. The court noted that although Mr. Lattimer did not specifically allege a violation of 42 U.S.C. § 1983, his allegation that State employees violated his due process rights while acting under color of law set forth the averments of a civil rights action under that federal statute. The court ruled, however, that his allegations were insufficient to maintain such a claim, because he did not plead or prove that state damage remedies were inadequate to address the alleged wrong. *See Hudson v. Palmer*, 468 U.S. 517 (1984); *Campbell v. Shearer*, 732 F.2d 531 (6th Circuit 1984). Those claims were accordingly dismissed.

The court observed that the petitioner's allegations also appeared to describe a negligence claim against State employees who were acting within the scope of their employment, a type of claim which may be heard only by the Tennessee Claims Commission. *See* Tenn. Code. Ann. § 9-8-307. The trial court accordingly dismissed the negligence claim without prejudice, so that Mr. Lattimer might file an action with the Claims Commission. This appeal followed.

## III. THE CLAIMS COMMISSION

The Tennessee Claims Commission has been endowed by the Legislature with exclusive jurisdiction to determine all monetary claims against the State that fall within certain categories, including claims for "negligent care, custody or control of personal property." Tenn. Code. Ann. § 9-8-307(a)(1)(F). When a claim is brought in the Claims Commission, the only proper defendant is the State itself, not the individuals responsible for the negligent conduct. Under Tenn. Code. Ann. § 9-8-307(b),

> Claims against the state filed pursuant to subsection (a) shall operate as a waiver of any cause of action, based on the same act or omission, which the claimant has against any state officer or employee. The waiver is void if the commission determines that the act or omission was not within the scope of the officer's or employee's office or employment.

The waiver described in the above passage is consistent with the immunity granted to State employees in Subsection (h) of the same statute. There are limits to that grant of immunity, however, for the State is not willing to assume responsibility for every act of its employees, even when they are acting within the scope of their employment:

> (h) State officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain . . . .

Mr. Lattimer asserts that he has been the victim of a willful, deliberate, and intentional act by those who destroyed his photos and those who supervised them. However, he has not alleged any specific facts to support the theory that any of the defendants was acting out of an improper motive. Thus, if the property at issue were something of a more impersonal nature, such as a television set, a hobby kit, or a favorite article of clothing, we would have no difficulty agreeing with the trial court that the appellant has at best asserted a claim for negligence, the type of claim for which the Claims Commission was established.

But a collection of family photos, organized and preserved in an album, is property of a different nature. Even a person of limited intelligence would have no trouble recognizing that such a collection represents an individual's relationship to family and friends. When that individual is imprisoned, and the opportunity to nurture those relationships is necessarily limited by his incarceration, the existence of photos such as these may constitute one of the few connections the prisoner can maintain with the world he has left behind.

We are not questioning the right of prison authorities to confiscate photographs or any other property in the possession of prisoners, when they deem it necessary in order to maintain safe and secure conditions of confinement. But it is hard to imagine a justification for destroying property

of such a personally valuable nature without notice to the owner, and hard to blame such an occurrence on mere carelessness by the parties responsible. An inference of malice is thus permissible when such property is intentionally destroyed by a State employee without notice or legal justification.

## IV.  42 U.S.C. § 1983

The Congress of the United States has created a remedy for individuals who are deprived of their constitutional rights by the action of state employees. Title 42 § 1983 of the United States Code reads,

"Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

After first ruling that a claim under 42 U.S.C. § 1983 may be based on negligent conduct, *Parratt v. Taylor*, 451 U.S. 527 (1981), the United States Supreme Court modified that holding, and decided that in most cases such a claim was only available for deprivation of constitutional rights based upon intentional or malicious conduct. *Daniels v. Williams*, 474 U.S. 327 (1986).

Even where malice can be proven, however, the Supreme Court has ruled that a federal civil rights claim based upon deprivation of property without due process of law cannot be maintained so long as there exists an adequate state remedy. *Hudson v. Palmer*, 468 U.S. 517 (1984). In the present case, the State contends that Mr. Lattimer's right to bring suit in the Claims Commission is just such an adequate remedy. We have established, however, that the State does not furnish a remedy for "willful, malicious, or criminal acts or omissions" by its employees. It thus appears to us that if the defendants' conduct is found to be malicious (as Mr. Lattimer claims it to be) then there is no remedy that the Claims Commission would be prepared to give.

## IV.  THE WAIVER PROVISION

In summary, the Claims Commission furnishes a remedy for injuries caused by the negligent conduct of state officials or employees who are acting in their official capacities, and the only proper defendant in such an action is the State itself. The United States Code furnishes a remedy for malicious or intentional actions by State employees acting under color of law, which result in a deprivation of constitutional rights, and the only proper defendants in this type of action are the individuals themselves. 42 U.S.C. § 1983.

We note that the waiver provision of Tenn. Code. Ann. § 9-8-307(b) is designed to prevent a plaintiff from receiving duplicative or inconsistent judgments in different tribunals for the same injury. It was not designed to force a litigant to make a premature and irrevocable choice between

tribunals or defendants, before his rights can be fully determined. *See Lester v. Walker*, 907 S.W.2d 812 (Tenn. Ct. App. 1995). In theory, if a plaintiff were successful in both forums, he would probably have to make an election between their judgments.

The more appropriate procedure, however, would be to hold the court proceedings in abeyance until the Claims Commission can determine whether the plaintiff's claim falls within its charter. If the Claims Commission determines that the destruction of Mr. Lattimer's albums was a negligent act, arising from the scope of employment of the named individuals, then the waiver comes into play, and the civil rights claim may be dismissed. As this court said, referring to claims against the individual defendants in *Lester v. Walker*, 907 S.W.2d 812 (Tenn. Ct. App. 1995), "[u]ntil the [Claims Commission] finds that all of the acts complained of were within the authority and duties of the defendants as employees of the State of Tennessee, the pending claim against the state is not conclusive of the rights of plaintiff against these defendants." 907 S.W.2d at 815.

## V. THE PROPER PARTIES

Title 42 U.S.C. § 1983 authorizes suit against "every person" who is responsible for alleged violations of constitutional rights. However, the Department of Correction is not a "person" within the meaning of the act. *See Will v. Michigan Department of State Police,* 491 U.S. 58 (1989). Further, although Commissioner Campbell may have established the policy that led to the destruction of the prisoner's albums, Mr. Lattimer is not challenging the Commissioner's authority to set policy for the Department, but only the misuse or misapplication of the Commissioner's policy by others. We accordingly affirm the trial court's dismissal of the appellant's claims against both the Department and Commissioner Campbell.

We also note that Mr. Lattimer's petition contains no allegation of facts to explain the connection between three of the defendants he named and the actions complained of. He states that they are culpable for failing to protect his rights, but fails to furnish any explanation of the role they may have played or that he expected them to play in protecting his property or his rights. We likewise affirm the dismissal of the claims against these defendants, Connie S. Klein, David Sexton and Gene T. Cousins.

Finally, the claims against Warden Carlton and Assistant Commissioner Bass are somewhat problematic. They have not been accused of destroying the albums or of ordering them destroyed, but only of overruling the grievance committee's recommendation to return the albums to Mr. Lattimer. Presumably, such decisions are within their authority. But if they knew at the time they made their decision that the albums had already been destroyed, or if their actions were somehow directed towards that result, then they ought to answer for the deprivation of rights that is the basis of Mr. Lattimer's claim. We thus reverse the trial court's dismissal of the claim against these two individuals, as well as against the two property room officers who allegedly destroyed Mr. Lattimer's albums.

## VI.

That portion of the trial court's order dismissing the civil rights claims against Corporal Barlow, Corporal Morefield, Assistant Warden Carlton and Assistant Commissioner Bass is reversed. In all other respects, the order is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the State of Tennessee.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.